WILBUR LARSON, v. STATE OF NEBRASKA.

FILED JULY 9, 1923. No. 23199.

1. **Rape:** CORROBRATIVE EVIDENCE. Opportunity alone, to commit the crime of rape, is not corroboration of the evidence of the complainant.

2. ———: REVERSAL: INSUFFICIENT EVIDENCE. While we recognize the rule that the jury are the judges of questions of fact, we do not hesitate to set aside a verdict where the evidence is clearly insufficient to sustain it. And this is of particular importance in a case involving the question of liberty or of life.

3. ———: CORROBORATIVE EVIDENCE. "In a prosecution for the crime commonly called statutory rape, where the prosecuting witness

testifies positively to the facts constituting the crime, and the defendant as positively and explicitly denies her statements, her testimony must be corroborated by facts and circumstances established by other competent evidence in order to sustain a conviction." *Mott v. State,* 83 Neb. 226.

4. **Evidence** examined, and *held* insufficient to support the verdict.

ERROR to the district court for Nuckolls county: RALPH D. BROWN, JUDGE. *Reversed.*

*J. H. Agee* and *F. H. Stubbs,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., LETTON, GOOD and DEAN, JJ., BLACKLEDGE, District Judge.

DEAN, J.

Wilbur Larson, defendant, aged 21, was convicted in Nuckolls county of committing statutory rape upon the person of Georgia Stinnett, under the age of 15 years, and was sentenced to serve a term of four years in the reformatory for men. He alleges error and has brought the case here for review.

Defendant is complainant's brother-in-law, he having married her sister in October, 1920. It is charged that the offense was committed August 13, 1921, when defendant and his wife were living at Superior and complainant and her mother were living eight blocks away in the same town. The complaint was filed a little more than eight months after the alleged commission of the offense, namely, May 10, 1922. Complainant testified that defendant came to her mother's home, August 13, in the forenoon when she was there alone; that as soon as he entered the house he at once announced the lewd purpose for which he came, which was followed by the assault of which complaint is made; that afterward she drove him away and the next morning she told her mother about it. She further testified, without objection, that not long before that time, on a certain evening, he conducted himself in an unseemly manner toward her

in her sister's home where she was visiting; that at the time she and her sister and defendant were all lying on a bed, her sister being drowsy for a part of the time; that defendant took hold of her hands and "dragged" her into a sitting-room which joins the bedroom, and took certain liberties with her, and that her sister, defendant's wife, looking from the darkened room through the open door into the lighted sitting room watched "this that was going on in the front room."

Mrs. Matilda Larson, defendant's wife, was called as a witness and, without objection, in part corroborated the evidence of her sister with respect to defendant's conduct while visiting at defendant's home. She testified that she, Mrs. Larson, went into the adjoining front room, and that her sister said she wanted to go to bed, and that the three went up-stairs together; that her husband, because he is crippled in one arm and one leg, walks just about half as fast as a person who is physically normal; that when he goes up-stairs he "puts his good foot up first and then his other one next, a step at a time; that instead of walking straight up the stairway he turns sideways so that he can put his right foot up first;" that she talked with her husband about the alleged offense and he denied that he was guilty. It appears that they were not living together when the case was tried.

Mrs. Stinnett is complainant's mother and was employed in a hospital at Superior in the daytime. She testified that, on the evening of August 13, complainant came to the hospital and, appearing to be quite warm, she asked her "what she had been running for," and that she answered that she was in a hurry and that defendant "had been out there;" that when she returned from her work at the hospital that evening she noticed that the bed in the front room was rumpled and the pillows were out of place; that her daughter did not then tell her that anything unusual had happened, but the next day told her of "defendant's having had or

attempting to have sexual intercourse with her."

When the prosecution announced its rest, defendant's counsel demurred to the evidence on the ground that it "failed to make out a case to prove the offense charged against the defendant in the information, and particularly failed to prove any corroboration of the offense." The demurrer was overruled and defendant's evidence was submitted.

Defendant by occupation is a moving picture operator. He denied all of the evidence which tended to prove his guilt. With respect to complainant's evidence concerning the alleged happenings at his home on the occasion of her visit there, and concerning which his wife testified, his version is that in the evening the complainant and his wife left him seated in the front room reading, where he remained while his wife and her sister lay down on the bed in the adjoining room; that some time afterward he went into the bedroom and told complainant to get up and go upstairs to bed; that she said she was afraid to go up-stairs in the dark, and he told his wife to go with her; that his wife also appeared to be afraid of the darkness and asked him to go along, and that he did so because his wife, being a short woman, could not reach an electric bulb to change it from one room to another, and, it being dark, she would experience some trouble if she tried to do so: that complainant, "who was always running and being at the head all of the time," was the first to go up-stairs; that as soon as he changed the bulb in the light fixture he immediately went down-stairs. He specifically denied all of the testimony which was introduced by the state with respect to his improper conduct on all the occasions referred to by the state's witnesses. He corroborated his wife's statement wherein she said she talked to him about the charge against him, but to that he added that she told him at the same time that "she didn't believe it at all, that there was nothing to it, she couldn't

understand why her mother would start anything like that."

With respect to his physical condition, defendant testified that he was paralyzed in one arm and in one leg as the result of an accident when he was a child of five years; that his right arm, which is crippled, has about half the strength of the other, and that he has always been compelled to wear a brace on his paralyzed leg in order to move about. It may here be recalled that his wife's evidence corroborates that of defendant with respect to his crippled condition.

The state's evidence appears to be lacking in respects that appear to us to be material. If complainant was abused, as charged in the information, it is reasonable to believe that a physical examination, of a person of her age, would have afforded some corroborative evidence of the charge of mistreatment, though it would not, of course, be conclusive against the person charged without other corroboration. As corroborative of the complaint, a neighbor woman testified that she saw defendant in a grape arbor in the yard of his mother-in-law in the forenoon of August 13, and said that the complainant, who had promised that day to come to her house for dinner, failed to come. It is urged that defendant had the opportunity to commit the offense. But a moment's reflection will convince a reasonable person that opportunity alone is not corroboration. *Fitzgerald v. State,* 78 Neb. 1; *Mott v. State,* 83 Neb. 226.

The rule which has long prevailed in this state is that, in a rape case, "where the prosecuting witness testifies positively to the facts constituting the crime, and the defendant as positively and explicitly denies her statements, her testimony must be corroborated by facts and circumstances established by other competent evidence in order to sustain a conviction." *Mott v. State,* 83 Neb. 226; *Fitzgerald v. State,* 78 Neb. 1. If the legislature is desirous that the rule which has so long prevailed shall be superseded by a different rule,

it is within its power to enact such rule.  In its wisdom it has not done so, and we are not disposed to usurp the function of the law-making body.  Doubtless the legislature, whose attention has been directed to the rule in question, takes notice of the universally conceded fact that the charge of rape is easy to make but is one of the most difficult to defend against, and this in part because it is the most dastardly offense that is known to the calendar of crime.

Under the law a complainant in a rape case, who is under the age of consent, is not required to resist her assailant's advances.  But in the present case the complainant, though under the age of consent, testified that defendant forcibly committed the offense without her consent.  She also testified that, though an elderly couple was living in another part of her mother's six-room house at the time, she made no outcry, giving as a reason therefor that she "wouldn't scream to let all the neighbors know this rumpus was going on." After the offense was committed she said she drove defendant away.  Whether the act was committed with or without her consent would of course be immaterial so far as constituting an offense under the statute is concerned.  But the circumstances which complainant details are proper to be considered as affecting her credibility.

The evidence with respect to the charge against defendant taxes our credulity.  It seems that a man who from his infancy has been a cripple, and who has ever since been compelled to hobble about on a paralyzed leg with an artificial brace, and from whose right arm the strength has departed would be incapable of exerting the physical activity attributed to him in the premises. In the oral argument counsel did not hesitate to charge that the filing of the complaint was a plot, or conspiracy, deliberately planned by complainant's family, and in this connection it was observed that the fact was unusual that a complaint was not filed for more than

eight months after the alleged commission of the offense. It may be added that the prosecution frankly concedes that "the evidence is not as satisfactory as in some cases."

While we recognize the rule that the jury is the judge of questions of fact, we do not hesitate to set aside a verdict where the evidence is clearly insufficient to sustain it. And this is of particular importance in a case involving the question of liberty or of life. That the record discloses a reasonable doubt of defendant's guilt sufficiently appears. *Gammel v. State,* 101 Neb. 532; *Force v. State,* 105 Neb. 175.

Upon a review of the entire record, we conclude that the verdict is not supported by the evidence. The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.