CHARLES H. WHOMBLE V. STATE OF NEBRASKA.

10 N. W. (2d) 627

FILED JULY 23, 1943. No. 31567.

*G. B. Hastings,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *John H. Comstock, contra.*

Heard before SIMMONS, C. J., PAINE, YEAGER, CHAPPELL and WENKE, JJ., and TEWELL and LIGHTNER, District Judges.

CHAPPELL, J.

Plaintiff in error, Charles H. Whomble, hereinafter called defendant, was charged by information filed in the district court for Chase county, Nebraska, with statutory rape under section 28-408, Comp. St. 1929. The crime was alleged to have been committed on or about June 10, 1939, upon a girl then 13 years of age. The information was not filed until June 27, 1941, more than two years after the alleged offense.

Defendant was tried to a jury in November, 1941, and a disagreement resulted. Upon a second trial in October, 1942, the jury found him guilty as charged. His motion for a new trial was overruled, whereupon the trial court sentenced defendant to serve a term of eight years in the Nebraska state penitentiary. Defendant prosecutes error to this court, contending, among other assignments, that the verdict is contrary to law, and not sustained by the evi-

dence. Since these errors are fatal to the verdict and sentence we shall not discuss the others.

An examination of the record discloses that the girl involved would have been 17 years of age within a few days of the time of the trial. She did not testify. No complaint was ever made by her of any misconduct by defendant.

Her brother, 14 years old at the time of the trial, testified that on or about June 26, 1939, between 10:30 and 11:00 a. m. he came through an unlocked door into defendant's hatchery, where the sister of witness was employed, and saw her and defendant on a bed facing each other. He was not sure what they were doing. He did not disclose any other relative act or circumstance. He testified that Leonard Bonner, a friend, who worked there, walked through the place at the same time, just ahead of him, but he said nothing to Leonard Bonner at the time or later about seeing defendant and the sister of witness. This witness never said anything about it to his sisters, mother, or any other person. He frankly admitted on cross-examination that after the preliminary hearing he told his mother and another sister that this testimony was false; that he had never seen defendant and his sister together as he had previously testified. Leonard Bonner testified that he was not employed at the hatchery or present at the time, as related by the brother, because he was driving a tractor on a farm out in the country.

The chief of police testified that he had seen defendant with the girl on the street, at a show, and at the swimming pool; also that in the fall of 1939 he had talked with defendant, who said that he thought they should help them instead of hindering them, as defendant loved the girl very much and wanted to be married. The deputy sheriff testified that in October, 1939, defendant asked him if he did not think it would be better for defendant and the girl to be married than go on in the way they were.

The evidence discloses that defendant continued with his business affairs in Imperial, Nebraska, until August, 1940, when he left the city. Thereafter the authorities had in

their possession letters alleged to have been written by defendant indicating his whereabouts. His father and mother lived at Wray, Colorado. In June, 1941, defendant was arrested at Fort Morgan, Colorado, not far from Imperial, Nebraska. He thereupon immediately waived extradition and willingly returned for trial. These circumstances give slight credence to the contentions of the state concerning flight of defendant after the alleged commission of the crime. See *Mathews v. State,* 19 Neb. 330, 27 N. W. 234.

The evidence heretofore recited is in substance all the evidence appearing in the record upon which defendant was convicted of this serious offense, except certain unsigned and undated letters identified by handwriting experts as having been written by defendant. We will not detail the manner of the procurement of these letters or recite their irrational and inexplicable contents in this opinion. Suffice it to say, that they contain ardent professions of love, respect, and regard for the girl's welfare, and a desire to make her his wife, in addition to admissions of misconduct with the girl without revealing either times or places, when or where committed. Defendant took the witness-stand and under oath made categorical denial of the charges against him. He was not cross-examined in any manner by the prosecution.

This court, and many others, have approved the words of Sir Matthew Hale, appearing in *Mathews v. State, supra*: "It is true that rape is a most detestable crime and therefore ought severely and impartially to be punished * * * but it must be remembered that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent," and that we should "be more cautious upon trials of offenses of this nature." See 52 C. J. 1087. In *Prichard v. State,* 135 Neb. 522, 282 N. W. 529, the court clothed this old truth with new words when it said, "Public sentiment seems inclined to believe a man guilty of any illicit sexual offense with which he may be charged, and it seems to matter little what his previous reputation has been. This natural

tendency may be due to the fact that, where a female child is involved and a man is charged with unlawful interference with her, by necessity, it casts odium upon the child, as well as charging the defendant with a felony."

In a prosecution for statutory rape the law is that to sustain a conviction the evidence must show beyond a reasonable doubt that defendant committed the act charged, and that he did so under such circumstances that every element of the offense existed. Where the evidence fails to meet this test it is insufficient to support a conviction. See 52 C. J. 1087; 23 C. J. S. 187, sec. 918.

"The *corpus delicti* is the body or substance of the crime, the fact that a crime has been committed without regard to the identity of the person committing it." *Andersen v. State*, 141 Neb. 306, 3 N. W. (2d) 447. See, also, 23 C. J. S. 181, sec. 916. As applied to the case at bar, it means the actual commission by some one of the particular crime charged, statutory rape, upon the girl involved. We have held that the *corpus delicti* cannot be proved by the unsupported extrajudicial confession of defendant, but that confessions or admissions may be considered in connection with other competent evidence, if any appears, to establish the *corpus delicti*. See *Limmerick v. State*, 120 Neb. 558, 234 N. W. 98. The rule is that to sustain a conviction for a crime, the *corpus delicti* must be proved beyond a reasonable doubt. See *Dreessen v. State*, 38 Neb. 375, 56 N. W. 1024; *McCue v. State*, 112 Neb. 9, 198 N. W. 163; *Andersen v. State, supra;* 52 C. J. 1089; 23 C. J. S. 186, sec. 917.

Except for the letters alleged to have been written by defendant, there is no competent evidence, either direct or circumstantial, that any crime was ever committed by any one upon the girl involved. See *Fitzgerald v. State*, 78 Neb. 1, 110 N. W. 676. If the letters are extrajudicial confessions, as asserted by brief and in argument, they alone are insufficient to establish guilt.

"The uniform doctrine of the American courts is that a conviction for felony will not be sustained when the only evidence of guilt is the extrajudicial confession of the de-

fendant that a crime has been committed. His confession may be sufficient to prove his own connection with the alleged criminal act, but there must in all cases be proof *aliunde* of the essential facts constituting the crime." *Sullivan v. State*, 58 Neb. 796, 79 N. W. 721. See, also, *Andersen v. State, supra; Blacker v. State*, 74 Neb. 671, 105 N. W. 302; 23 C. J. S. 182, sec. 916. The general rule in our own state, supported by an almost unbroken stream of decisions from other jurisdictions, is that a naked extrajudicial confession of guilt by one accused of crime, uncorroborated by any other competent evidence, is not sufficient to warrant or sustain a conviction. A long and exhaustive note citing many cases including Nebraska, portraying the varied applications of this rule and giving cogent and compelling reasons therefor, will be found in 127 A. L. R. 1120-1142, inclusive. For its particular application in sex cases, see 40 A. L. R. 458-473, inclusive. Many courts in pointing out the danger of accepting and acting upon the confession of the accused without other evidence that the crime in question has been committed, frequently refer to the numerous known cases in which false confessions of guilt have been given. The danger of the use of extrajudicial confessions, unsupported, is that they may be the sequel of a diseased, disordered, or confused mind, based upon dangers, imaginary or real, or upon psychopathic aberration.

Counsel in brief and argument assume that defendant's alleged letters are extrajudicial confessions, but they are at most merely admissions by defendant of misconduct with the girl, written many months after the alleged offense. "The difference between a confession and an admission is that the former * * * is an acknowledgment of guilt while the latter is but an acknowledgment of some fact or circumstance in itself insufficient to constitute an acknowledgment of guilt, and tending only toward the proof of the ultimate fact of guilt." 22 C. J. S. 1422, sec. 816a. In the eyes of the law, extrajudicial admissions as evidence do not rise to the dignity and force of extrajudicial confessions. *A fortiori*, extrajudicial admissions against interest by one

charged with crime must be received and considered with caution and are not sufficient of themselves to support a conviction. See 22 C. J. S. 1248, sec. 730; *Limmerick v. State, supra.*

This court recognizes the rule that the jury are the judges of questions of fact, but does not hesitate to set aside a verdict when the evidence is clearly insufficient under applicable law to sustain it in a criminal case involving questions of life or liberty. See *Larson v. State,* 110 Neb. 620, 194 N. W. 684; *Prichard v. State, supra.*

An examination of the record and applicable law convinces this court that the evidence in the case at bar is wholly insufficient to support the judgment of conviction. The judgment of the district court is, therefore, reversed and the action dismissed.

REVERSED AND DISMISSED.