STATE OF NEBRASKA, APPELLEE, V. ANDREW J. HIRD, APPELLANT.

476 N.W.2d 229

Filed October 25, 1991.    No. 90-537.

Dennis R. Keefe, Lancaster County Public Defender, for appellant.

Robert M. Spire, Attorney General, and James A. Elworth for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is a criminal case in which the defendant-appellant, Andrew J. Hird, was charged in four separate counts with practicing psychology without a license, in violation of Neb. Rev. Stat. § 71-1,221 (Reissue 1990); contributing to the delinquency of a child, in violation of Neb. Rev. Stat. § 28-709(1) (Reissue 1989); failure to report suspected abuse or neglect, in violation of Neb. Rev. Stat. § 28-711(1) (Reissue 1985); and interfering with custody, in violation of Neb. Rev. Stat. § 28-316(1) (Reissue 1989).

Hird pled no contest to count I, practicing psychology without a license, and not guilty to the remaining three counts. These three counts were tried to a jury in the county court for Lancaster County, Nebraska. The trial judge directed a verdict for Hird on count III, failure to report suspected abuse or neglect, at the close of the State's case in chief. The jury found Hird guilty of count II, contributing to the delinquency of a child, and not guilty of count IV, violation of custody. After a sentencing hearing the trial judge sentenced Hird to 60 days in the county jail on count I and 90 days in the county jail on count II, the sentences to run consecutively.

Hird appealed to the Lancaster County District Court, which affirmed the trial court's decision. He now appeals to this court.

## FACTUAL BACKGROUND

The facts upon which the jury found Hird guilty of contributing to the delinquency of a child are as follows:

On March 16, 1988, Billi Ivey, a 16-year-old high school student, left school with her boyfriend, intending to run away from home, possibly to Kentucky. At the boyfriend's suggestion, the two stopped at Hird's Multi-Cultural Center for Youth and Adults, where Hird engaged in counseling a "wholistic therapy," around 6 p.m. that day.

Billi told Hird that she was running away from home and needed some help trying to figure out what to do. After some discussion it was decided that Hird would put Billi up for the night. Shortly thereafter, Billi called her father to tell him she was all right, but that she was not coming home. Her father

apparently hung up the phone on her at that point. Hird was in the room when Ivey made this call.

Hird arranged for Billi to spend the night at the dormitory room of one of his female interns. Prior to Billi's return to the center the next morning, Hird called her home and spoke to Billi's mother. He told Mrs. Ivey that her daughter had contacted him, and he asked whether the Iveys were interested in meeting with their daughter later that afternoon. Hird denied that he knew where Billi was, but assured Mrs. Ivey that he could arrange the meeting. Because she felt it was the only means of talking to her daughter, Mrs. Ivey agreed to the meeting.

Later that morning, Officer Raymond Kansier of the Lincoln Police Department visited Hird at his center and asked him if Billi had contacted him or if he knew of her whereabouts. Hird told Officer Kansier that Billi had contacted him and that he was interested in assisting her with her problems, but that he did not know where she was. Apparently Billi had arrived back at the center at the time of this conversation. Officer Kansier informed Hird that Billi was a runaway and instructed him to contact the authorities if Billi contacted him again. At no point did Hird report his contact with Billi to the police or the Department of Social Services.

Instead, Billi spent the remainder of the morning and early afternoon watching television at the center. At approximately 3 p.m., Billi's parents arrived at the center. Hird met with Billi and her parents for approximately 2 hours. At that point Mr. Ivey took Billi by the arm and said it was time to leave. Billi resisted and an argument ensued. Shortly thereafter, Billi went home with her parents. Billi testified that she decided to willingly go home rather than have the police come and force her to do so.

At the time of trial, Billi was living and attending school at Boys Town pursuant to a prior agreement between her and her parents that she would be sent there if serious problems with her behavior developed.

## ASSIGNMENTS OF ERROR

Hird argues on appeal that the district court erred in affirming the judgment of the county court because (1) there is

insufficient evidence as a matter of law to convict him of contributing to the delinquency of a child, (2) the contributing statute is unconstitutionally overbroad as applied in this case, and (3) the sentences imposed are excessive in light of the facts and circumstances of the case.

## SUFFICIENCY OF THE EVIDENCE

On a claim of insufficiency of the evidence, this court will not set aside a guilty verdict in a criminal case which is supported by relevant evidence. *State v. West*, 238 Neb. 939, 473 N.W.2d 81 (1991). However, when the evidence is insufficient as a matter of law to support a verdict of guilty beyond a reasonable doubt, this court will not hesitate to set it aside. *Id.*; *Whomble v. State*, 143 Neb. 667, 10 N.W.2d 627 (1943).

Hird mounts a two-pronged attack on the sufficiency of the evidence in this case. First, he argues that proof of criminal intent is an essential element of the crime of contributing to the delinquency of a child and that the State produced no evidence of such intent in this case. Second, Hird argues that, aside from the issue of intent, the evidence in the record is insufficient as a matter of law to support a jury finding that he contributed to the need for special supervision of a child under 18 years of age. Because of our agreement with the latter contention, it is unnecessary to address the issue of whether criminal intent is an essential element of the crime of contributing to the delinquency of a child.

Section 28-709(1) states:

> Any person who, by any act, encourages, causes, or contributes to the delinquency or need for special supervision of a child under eighteen years of age, so that such child becomes, or will tend to become, a delinquent child, or a child in need of special supervision, commits contributing to the delinquency of a child.

The statute defines a "delinquent child" as "any child under the age of eighteen years who has violated any law of the state or any city or village ordinance." § 28-709(2)(a). There is no evidence in the record that during her stay at Hird's center Billi engaged in any unlawful activity or that Hird in any way

encouraged her to do so. Therefore, we turn our attention to the question of whether there is evidence that Hird contributed to Billi's becoming, or tending to become, a child in need of special supervision.

The statute defines a child in need of special supervision as

> any child under the age of eighteen years (i) who, by reason of being wayward or habitually disobedient, is uncontrolled by his parent, guardian, or custodian; (ii) who is habitually truant from school or home; or (iii) who deports himself so as to injure or endanger seriously the morals or health of himself or others.

§ 28-709(2)(b).

Proceeding in reverse order, there is no evidence to suggest that Hird did anything which caused or tended to cause Billi to behave in a manner injurious to the morals of herself or others. Billi did not engage in any unlawful or immoral conduct, nor was she exposed to such conduct on the part of others while at Hird's center. Moreover, by arranging for Billi to stay with one of his female interns, Hird prevented Billi and her boyfriend from spending an unchaperoned night on the streets of Lincoln, a situation much more threatening to their morals and health.

Neither is there any evidence that Hird caused Billi to be *habitually* truant from school or home. Again, precisely the opposite is the case. Prior to contacting him, Billi apparently did not intend to return to school or home. Through his efforts, however, Billi returned to her parents' home only 1 day after she ran away.

The parties agree that it is subpart (i) of § 28-709(2)(b) that is at issue in this case. Pointing to the anxiety which Hird's failure to immediately report Billi's whereabouts caused her parents, the State argues that his acts contributed to her remaining wayward and disobedient several hours longer than necessary. In essence, the State urges us to recognize a duty on the part of persons coming into contact with runaways to immediately notify either the parents or the authorities.

We are reluctant to interpret § 28-709(1) as creating such a duty. During the sentencing hearing in this case, Christina Godfrey, executive director of the Malone Community Center, testified that in 1987 a 13-year-old boy called one of her staff

members and asked if he could come to the staff person's house. The staff person told the boy he could not, and the boy ultimately committed suicide. Godfrey stated that because of Hird's prosecution, human services agencies are unsure what to do in similar situations. She pointed out that immediately calling the authorities erodes the trust crucial to the effectiveness of centers like hers and results in youths simply not approaching them the next time they are in trouble.

Moreover, it is not necessarily clear when a person becomes a "runaway." Are members of the clergy or neighbors to whom a young person turns for help criminally liable if they do not immediately call the police? Recognizing such a duty potentially precludes people from engaging in much socially desirable conduct. Without stating a definite rule applicable to all situations, we do not think the simple act of affording shelter to a youth on the run is always a violation of the statute, especially when the person affording shelter did not induce or encourage the youth to leave home in the first place. Accord *State v. Macri*, 28 Utah 2d 69, 498 P.2d 355 (1972).

We therefore reject the State's invitation to interpret § 28-709(1) as imposing a duty to immediately contact the authorities upon coming into contact with a runaway. In so doing, we note that § 28-711(1) expressly creates a duty to report suspected abuse or neglect of a child to the police or the Department of Social Services. The Legislature has shown that when it wants to create a duty to report, it knows how to do so. We will not presume to supplement that body's policymaking role. See *Bowers v. Maire*, 179 Neb. 239, 137 N.W.2d 796 (1965).

The record in this case shows that Billi Ivey was a runaway when she arrived on Hird's doorstep. She and her boyfriend had no idea where they were going to spend the night and no idea where they would go the next day, except for a vague notion of going to Kentucky. Had Hird left them to fend for themselves that first night, he might well be facing the same charges. Instead, he put Billi up for the night in a safe place and arranged a meeting with her parents the next day. Far from contributing to Billi's waywardness and disobedience, Hird played an active role in preventing its continuation.

Our discussion should not be interpreted as condoning Hird's behavior, however. Neb. Rev. Stat. § 28-907(1) (Reissue 1989) makes it a crime to furnish false information to a police officer to impede the investigation of a criminal matter. The State did not elect to proceed on this theory. However, Hird's statements to Officer Kansier may well have violated this provision. See *State v. Ewing*, 221 Neb. 462, 378 N.W.2d 158 (1985).

Though the jury acquitted Hird of violation of custody, see § 28-316(1), we find morally indefensible his withholding of information regarding Billi's whereabouts to broker a meeting between her and her parents. Such conduct severely encroaches on the parents' right to raise their own child. The crucial point, however, is that while Hird interfered with the Iveys' right to see their child, he in no way interfered with her ability to see them. There is no evidence suggesting that Billi was not at all times perfectly free to leave the center and either return home or continue her flight. As outlined above, Hird in no way put Billi at risk, and in fact his actions helped her avoid a situation posing much greater threats to her morals and health.

Based on all of the above, we conclude that there is insufficient evidence as a matter of law to sustain a jury finding that Hird contributed to the delinquency of a child. His conviction on that charge is therefore reversed and this cause remanded with directions to dismiss count II of the amended complaint. In light of our holding, it is unnecessary to address the constitutionality of § 28-709 as applied in this case.

## EXCESSIVENESS OF THE SENTENCES

Hird also argues that the sentences imposed in this case are excessive. The trial judge sentenced Hird to serve a term of 60 days in the county jail for practicing psychology without a license and 90 days in the same facility for contributing to the delinquency of a child, the sentences to run consecutively. In light of our holding above, we need only review the 60-day sentence imposed for practicing psychology without a license.

Hird argues that he should have received a sentence of probation or fines rather than jail time. The crime of practicing psychology without a license is a Class II misdemeanor. § 71-1,221. Conviction of committing a Class II misdemeanor

subjects a person to imprisonment for up to 6 months, a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 1989). The denial of probation and the imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal unless there is an abuse of discretion. *State v. Green*, 238 Neb. 492, 471 N.W.2d 413 (1991).

The trial judge initially proposed a sentence of probation in this case. In response, Hird indicated he would not comply with the terms of the proposed order, specifically objecting to certain provisions placing restrictions on the continued operation of his counseling center.

The imposition of sentence following conviction of crime is not akin to a contract negotiation in which the court offers terms which the defendant is free to accept or reject. See *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986). If Hird desired probation in this case but objected to the reasonableness of the terms involved, he could have challenged the reasonableness of the terms on appeal. See Neb. Rev. Stat. § 29-2262(2)(p) (Cum. Supp. 1988). Instead, he indicated that he would not comply with the terms of the trial court's order. It is entirely proper for a judge to reject the alternative of probation based on the defendant's presentence statements. *Lynch, supra; State v. Kinney*, 217 Neb. 701, 350 N.W.2d 552 (1984). The trial judge did not abuse her discretion by imposing a sentence of incarceration in this case. We therefore affirm that part of the trial court's order imposing a sentence of 60 days in the county jail on count I of the amended information.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.