STATE OF NEBRASKA, APPELLEE, V. BONNIE MCCASLIN,
APPELLANT.
482 N.W.2d 558

Filed April 10, 1992.    No. S-90-1025.

James H. Truell for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.
Defendant appeals her convictions following a jury trial of the offenses of perjury, a Class III felony under Neb. Rev. Stat.

§ 28-915 (Reissue 1989), and making a false statement under oath, a Class I misdemeanor within the meaning of Neb. Rev. Stat. § 28-915.01 (Reissue 1989). She was sentenced to prison terms of 1 to 20 years and 1 year, to be served concurrently. Defendant assigns as error the insufficiency of the evidence because of the lack of corroboration of eyewitness testimony, the admission of certain photographic exhibits, and the excessiveness of the sentences. We affirm.

On a criminal defendant's motion to dismiss the charges against him or her for insufficient evidence, the State is entitled to have all its relevant evidence accepted as true, the benefit of every inference reasonably drawn from the evidence, and every controverted fact resolved in its favor. *State v. Bright*, 238 Neb. 348, 470 N.W.2d 181 (1991).

It is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990), *cert. denied* ____ U.S. ____, 112 S. Ct. 143, 116 L. Ed. 2d 109 (1991).

Denial of a criminal defendant's motion to dismiss is without error where the State introduces competent evidence which, if believed by the jury, is sufficient to establish all elements of the crimes charged against the defendant. *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987).

Both charges against the defendant arose out of her testimony during the trial of her son on a charge of failing to stop at a stop sign in the case *State of Nebraska v. Michael McCaslin* in the county court for York County, case No. TR90-181.

The testimony allegedly amounting to perjury was as follows:

BY MS. McCASLIN:

I — I was sitting in Chances R at a little corner table where I always sit if I can. And I was having a drink. And he [her son] was going by wondering if I was out there yet. And I did see him stop.

THE COURT: Okay. Is there anything else?

MS. McCASLIN: Nothing that I can think of. Except that, you know, he definitely did stop.

. . . .

Q. And you're telling us that you just happened to notice him as he comes by, approaches the intersection and you see him stop at the intersection?

A. Yes. He had taken a few cruises by seeing if I was out there ready.

The testimony relating to the defendant's making false statements under oath was more involved and was as follows:

Q. Have you ever been convicted of a crime involving dishonesty?

A. No.

. . . .

Q. Or any other crime that involves dishonesty?

A. No.

Q. Which includes bad checks, theft by deception. Those sorts of activities.

A. I've had problems with my family, but it was strictly family problems.

Q. Well, I'll ask you again. Have you been — ever been convicted of any crime involving dishonesty?

A. I wasn't convicted. I've had problems with my family. Yes.

Q. Well, is that - - -

A. But it was strictly family problems.

Q. Is that a yes or a no?

A. I'd say from my point of view it's a no.

Q. Okay. So, again, asking you - - -

A. Perhaps from yours it's a yes. But from mine, it's no.

Q. Well, it's — it's a very simple question. Have you ever been convicted of a crime that involves - - -

A. No.

Q. - - - dishonesty?

A. Although I've had family problems.

Q. Well, Ms. Mac — Ms. McCaslin, I want you to answer yes or no to this question.

A. No.

Q. Okay. I'm going to ask you one more time.

A. I paid fines on — on things. But - - -

Q. I'm going to ask you one more time - - -

A. - - - it was strictly family problems.

Q. Okay. Ms. McCaslin - - -

THE COURT: Ms. McCaslin, just allow Mr. Campbell to ans — to ask the question and then answer his question yes or no, and then we can get on.

A. I don't believe I've ever been convicted.

THE COURT: No. Let him ask his question. He hasn't asked his question. Wait until he asks the question and then answer yes or no to the question.

MS. McCASLIN: Okay. Sorry, Your Honor.

THE COURT: All right. You may proceed.

Q. (By Mr. Campbell) Have you ever been convicted of a crime that involves dishonesty?

A. I don't believe I've ever been convicted. I have paid fines because I had a lot of problems with my family.

Q. Well, can you tell us how you would pay fines for these crimes without being convicted?

A. When I came home from LA my family was determined that they were going to cause a lot of problems for me. And I have a lot of problems because my — because of my family.

Q. Well, I don't understand how you would pay a fine without having been convicted. Can you explain that?

A. I don't think I was convicted. I mean the charges were, like dropped, as far as I'm concerned, and I paid some fines.

Q. Okay.

A. But it was all due — it was all family problems.

Q. Again, you don't know why you would pay a fine if you hadn't been convicted.

A. No.

The foregoing questions and answers were taken from the trial involving *State of Nebraska v. Michael McCaslin* and were alleged in full in the information filed against the defendant here.

We deal first with the charge of making a false statement

under oath. The State submitted evidence of defendant's prior convictions of theft by deception, insurance fraud, and of issuing an insufficient-fund check. As a result there was sufficient evidence for the jury to find the defendant guilty of the charge of making a false statement under oath.

However, appellant argues that she "personally did not feel convicted although the judicial system may have." Brief for appellant at 11. She contends that she has been charged with making a false statement based upon her *belief* that she had never been convicted, in violation of § 28-915.01, which states in part: "A person who makes a false statement under oath . . . when he or she does not *believe* the statement to be true, is guilty of a Class I misdemeanor . . . ." (Emphasis supplied.)

Although neither the research of the parties nor that of the court discloses any cases in Nebraska directly on this particular point, there are cases involving perjury in other jurisdictions which are helpful in deciding this issue.

There are two essential elements of proof in perjury cases. First, the statements made by the defendant must be proven to be in fact false. Second, it must be proven that the defendant did not believe the statements to be true when made. *La Placa v. United States*, 354 F.2d 56 (1st Cir. 1965), *cert. denied* 383 U.S. 927, 86 S. Ct. 932, 15 L. Ed. 2d 846 (1966).

In *People v. Watson*, 85 Ill. App. 3d 649, 406 N.W.2d 1148 (1980), the court, in reversing a dismissal of the indictment by the trial court because of the defendant's use of words such as "possibly," "to the best of my knowledge," and "not that I remember," noted that a statement of belief may constitute perjury when, as a matter of fact, the witness had no such belief.

The appellant in *Cassady v. State*, 18 Okla. Crim. 568, 197 P. 171 (1921), was charged with perjury by making a false affidavit to procure a marriage license. Although his bride-to-be was only 12 years old, the defendant wrote in the affidavit that she was 18. The defendant argued that the girl told him she was 18 years old and he believed her. The court concluded that there was sufficient evidence before the jury to warrant a finding that the defendant knew when he made the application for a marriage license that his bride was under the

age of 18 years.

A defendant charged with perjury in *People v. Dixon*, 99 Cal. App. 2d 94, 221 P.2d 198 (1950), unsuccessfully argued against his conviction because he couched his testimony in the form of opinion or belief.

The California appellate court did not agree with this argument and stated:

> If this is the true rule no defendant could ever be convicted of perjury in California if he was careful to qualify his testimony, no matter how willfully false, by the words, "In my opinion," "to the best of my belief" or an equivalent, since no witness can testify directly to the state of another's mind.

*Id.* at 96, 221 P.2d at 199. The court added:

> "If a person willfully swears falsely to a belief in the existence of a fact which he knows does not exist he is as guilty of perjury as if he had sworn directly to the existence of a fact which he knew did not exist." . . .
>
> In every case perjury must be knowingly false, and in every case the defendant's actual state of mind cannot be directly proved. It is for the jury to say in every case of perjury whether the defendant believed the truth of his testimony when he gave it.

*Id.*

In *Brasher v. State*, 715 S.W.2d 827 (Tex. App. 1986), the defendant, a police officer, testified before a grand jury that his partner shot a drunk driver to prevent him from running his truck into the defendant. At the defendant's perjury trial there were witnesses who testified they saw a flash and heard a shot at a time when the defendant, Brasher, was at the rear wheel of the truck. Brasher argued that the evidence was not sufficient to sustain a conviction because he merely expressed an opinion when he told the grand jury that his partner shot the driver to prevent him from running over the defendant.

The Texas court held that defendant's testimony was at most an opinion concerning a matter of objective fact. The court cited to *People v. Dixon, supra,* and stated that "[a] person who willfully swears to a belief in the existence of a fact which he knows does not exist is as guilty of perjury as if he has sworn

directly to the existence of a fact which he knew did not exist." *Brasher v. State*, 715 S.W.2d at 831. The court found that defendant's state of mind when he testified must be considered a " 'representation of fact' "; otherwise, a witness could be allowed to frustrate the inquiries of a grand jury by prefacing his sentences with words like " 'I believe' " or " 'I feel.' " *Id.*

The defendant in *United States v. Ponticelli*, 622 F.2d 985 (9th Cir. 1980), *cert. denied* 449 U.S. 1016, 101 S. Ct. 578, 66 L. Ed. 2d 476, was convicted on two counts of making a false declaration to a grand jury. While testifying, the defendant prefaced his sentences with " 'Not that I can recall [and] It's news to me' " and " 'I have been of the opinion . . . .' " 622 F.2d at 987. The defendant, on appeal following his conviction, argued that he testified only as to his memory and opinions and that given the subjective nature of his testimony, the jury could not conclude beyond a reasonable doubt that his testimony was knowingly false.

The appellate court disagreed and stated that if defendant's argument were accepted, a grand jury witness could deceive a grand jury or frustrate its inquiry with impunity, simply by prefacing each sentence with the words "I believe."

Although there is some authority which would be considered contrary to that expressed above, we believe the holdings of those courts which we cited express the more reasonable position, and it is the one which we adopt.

We therefore hold that a person can be convicted of making a false statement under oath when making a statement based on a belief that he or she knows is false. It is up to the jury to decide whether the defendant believed in the truth of his or her testimony when uttered. The knowledge of falsity may be inferred by the trier of fact from the surrounding circumstances, and such an inference may be derived from several sources: the objective falsity itself, a motive to lie, or facts tending to show generally that defendant knew his or her affirmation was false. Objective falsity as proof of knowledge arises when actual falsity is established and defendant's awareness of it is inescapable and self-evident. *State v. Boratto*, 80 N.J. 506, 404 A.2d 604 (1979). Proof of the falsity of a response may circumstantially imply knowledge that such was

untrue when uttered. *People v. Toner*, 55 Ill. App. 3d 688, 371 N.E.2d 270 (1977).

The evidence was sufficient for a jury to find beyond a reasonable doubt that the defendant was guilty of making a false statement under oath, and the claimed error in that regard is without merit.

We next deal with defendant's contention that her conviction of perjury was in error because the State failed to provide proper corroborative evidence to exclude all reasonable doubt as to the guilt of the defendant on the charge of perjury. It is therefore her position that her motion to dismiss at the close of the State's evidence should have been sustained.

Section 28-915 states:

(1) A person is guilty of perjury, a Class III felony, if in any official proceeding he or she makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he or she does not believe it to be true.

. . . .

(7) No person shall be convicted of an offense under this section when proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant.

In *State v. Mayhew*, 216 Neb. 761, 767, 346 N.W.2d 236, 240 (1984), we held:

In the degree of proof necessary to prove the crime of perjury, Nebraska has long adopted the rule set out in *Gandy v. State*, 23 Neb. 436, 450, 36 N.W. 817, 823 (1888), where we stated with regard to the degree of corroboration necessary to prove perjury: " 'If, therefore, the oath of the accused is met by a single oath, the corroborating circumstances ought at least to equal the testimony of a single witness; the lowest quantity of testimony it has been said upon which a human being can be found guilty.'

"This perhaps, is the better and safer rule. It does not require the testimony of two witnesses to the same fact, but it does require that the proof of the corroborative facts shall be such as to give a clear preponderance of the

evidence in favor of the state, and thus, by such preponderance, establish the falsity of the oath, beyond a reasonable doubt. . . ."

This indicates that in Nebraska, perjury can be proved either by two witnesses or by one witness, together with material and independently established corroborative facts sufficient to amount to the testimony of another witness. The State argues that the corroborative evidence and the single eyewitness prove the appellant's guilt beyond a reasonable doubt.

McCaslin concedes that Officer Roger Wolfe's testimony given at the trial of Michael McCaslin directly contradicts her testimony. However, she argues that the corroborative evidence given by the State in the form of testimony by Officer Michael Hanke, who was also at the scene, is insufficient.

The record of Michael McCaslin's trial shows that Officer Wolfe saw the blue Chevette being driven by Michael McCaslin entering the intersection without stopping at the stop sign. Michael McCaslin entered the intersection of 5th Street and Platte Avenue coming from the east on 5th Street and turned right, or north, on Platte Avenue. Officer Wolfe was proceeding south on Platte Avenue just north of 5th Street, and Officer Hanke was also proceeding south on Platte Avenue a distance of approximately two car lengths behind Wolfe. Hanke testified that he first saw Michael McCaslin's car when it was approximately 6 to 10 feet east of or short of the intersection. He testified that Michael McCaslin's automobile made such a wide turn that it almost ran into Officer Wolfe's patrol unit. Hanke said that the car never did come to a stop during this period of time "that I saw."

It seems to be McCaslin's position that because Officer Hanke had not seen the Michael McCaslin automobile until it was within 6 to 10 feet of the intersection that he was not able to say that it did not stop at some point farther from the intersection. Therefore, she claims, this is insufficient corroboration of the testimony of Officer Wolfe. Such a claim is without substance.

In any event, there were several photographs received in evidence which showed the location where the defendant was seated in the Chances R restaurant and lounge, including what

her view would have been of the street where this incident occurred. These exhibits cast doubt as to her ability to see what she claims to have seen. The evidence was sufficient to support a verdict of guilty on the charge of perjury.

Referring to the photographs, the defendant claims that the court erred in overruling her foundation objection to the reception of these exhibits.

" 'Photographs are admissible in evidence if shown to be true and correct representations of the places or subjects they purport to represent at times pertinent to the inquiry. . . .' " *State v. Red Kettle*, 239 Neb. 317, 326, 476 N.W.2d 220, 226 (1991). The admission of photographs shown to be correct representations is within the discretion of the trial court as to relevancy, and unless an abuse of discretion is shown, error may not be predicated thereon. *Red Kettle, supra*. "A photograph adequately identified as correctly portraying conditions as they existed at the time of the event under consideration is admissible even though taken at some distance in time from the occurrence of the event. Inaccuracies and unreliability can be exposed by cross-examination." *Jenkins v. Associated Transport, Inc.*, 330 F.2d 706, 710 (6th Cir. 1964).

Raymond Reetz, the owner of Chances R restaurant and lounge, as a witness to provide foundation for the introduction of the photographs, testified that they accurately depicted the interior of his lounge area as it existed for the last 5 years, including January 23, 1990, the date of the incident testified to by defendant. It seems to be the defendant's position that because Reetz, in his testimony, was not certain whether he was in this area between the hours of 11 and 12 p.m. on January 23, 1990, and therefore did not know whether the table where the defendant claimed to have been sitting and the chairs had been moved that night, the foundation for introduction of the photographs was insufficient.

It seems to us that testimony that furniture in a lounge area had been in the same place for 5 years supports a permissible inference that the setup of the furniture remained the same during this crucial 1-hour period. Besides, defendant's own testimony given in the case *State of Nebraska v. Michael McCaslin*, and which appears as exhibit 27 in this proceeding,

describes in detail the location and position of the table and chairs where she was sitting, which conforms to the description manifested by the photographs. There is no merit to this claim of error.

Finally, McCaslin argues that sentences of imprisonment of 1 to 20 years for perjury and 1 year for making a false statement under oath were excessive. The sentences were ordered to be served concurrently.

The denial of probation and the imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal unless there is an abuse of discretion. *State v. Hird*, 239 Neb. 331, 476 N.W.2d 229 (1991).

In considering probation in lieu of a sentence, the court should not withhold imprisonment when a lesser sentence would depreciate the seriousness of the offender's crime or promote disrespect for the law. Neb. Rev. Stat. § 29-2260(2)(c) (Reissue 1989); *State v. Green*, 238 Neb. 475, 471 N.W.2d 402 (1991). Deliberate false testimony in a court proceeding tends to destroy the integrity of the judicial system and cannot be tolerated.

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991).

An abuse of discretion takes place when the trial court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Red Kettle, supra.*

In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991). Moreover, it is the minimum portion of an indeterminate sentence which measures its severity. *State v. Haynie, supra.*

Defendant's prior record includes a 1982 incident in Los Angeles where she was placed on probation for 5 years on a

count of insurance fraud; a fine and restitution ordered on an insufficient-fund check; fines for two cases of no operator's license and for no valid registration; a fine for shoplifting, followed by a conviction 2 months later for criminal trespass arising out of trespassing in the same store; and probation for 5 years for theft by deception.

There clearly was no abuse of discretion on the part of the trial court in imposing the sentences which it did. The judgment is affirmed.

AFFIRMED.