STATE OF NEBRASKA, APPELLEE, V. ROBIE CROWDELL, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. MICHAEL CROWDELL, APPELLANT.

487 N.W.2d 273

Filed August 7, 1992.    Nos. S-90-1070, S-90-1071.

Kevin V. Schlender for appellants.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Defendants, Robie Crowdell and Michael Crowdell, each appeal their separate convictions on one count of intentional abuse of a minor child, their son John Jeffrey Crowdell (Jeff), in violation of Neb. Rev. Stat. § 28-707 (Reissue 1989), a Class IV felony punishable by maximum imprisonment for 5 years, a $10,000 fine, or both such imprisonment and fine, Neb. Rev. Stat. § 28-105(1) (Reissue 1989). Following entry of not guilty pleas, defendants' cases were joined for a bench trial, which resulted in their separate convictions as charged. Each defendant was sentenced to serve not less than 20 months nor more than 5 years' imprisonment. Separate appeals were perfected and consolidated for argument. We affirm.

Defendants assign two errors: First, the evidence was insufficient to sustain their convictions. Second, the court imposed excessive sentences.

Section 28-707 provides:

(1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:

(a) Placed in a situation that endangers his or her life or health; or

(b) Cruelly confined or cruelly punished; or

(c) Deprived of necessary food, clothing, shelter, or care.

. . . .

(4) Child abuse is a Class IV felony if the offense is committed knowingly and intentionally.

## BACKGROUND FOR CHARGES

At the outset, a summary of the facts and circumstances leading to the charges against defendants is helpful. Defendants are the parents of five children. Jeff, the next oldest child, was born on June 19, 1977, and weighed 4 pounds 15 ounces; at age

$12^{1}/_{2}$ he was $49^{1}/_{2}$ inches tall and weighed 46 pounds. Defendants testified that at an early age Jeff was moody and displayed aggressive interaction with his siblings. For this, defendants consulted several medical experts, including Dr. Richard Brouillette, a family practitioner, who conducted a blood sugar test and reported to defendants that Jeff's blood sugar level was low. From this report, defendants, particularly Robie Crowdell, concluded that Jeff's behavioral problems were caused by hypoglycemia. However, Dr. Brouillette testified that he did not at any time prescribe dietary restrictions to be imposed on Jeff. An entry in Dr. Brouillette's patient records on August 9, 1983, noted Jeff's small size and contained a notation that "mom really doesn't want to investigate it much so I guess we'll leave it go at that." In September 1985, defendants consulted Dr. Carol Huseman and requested that she test Jeff for hypoglycemia. Dr. Huseman conducted the test, confirmed that Jeff was borderline hypoglycemic, and recommended that Jeff receive frequent feedings to alleviate the problem. Dr. Huseman stated that restricting food intake, especially in children, can cause a decrease in blood sugar levels, causing hypoglycemia.

Nevertheless, in direct opposition to Dr. Huseman's recommendation regarding frequent feedings, defendants imposed continuous dietary restrictions upon Jeff in order to limit his sugar intake. A typical meal at home for Jeff consisted of half a cheese sandwich and a hard-boiled egg, except approximately once a week when Jeff was allowed to eat beef, mashed potatoes, and green beans. His school lunch was made up of half a cheese sandwich and a small bag of potato chips.

To satisfy his hunger, Jeff began sneaking food from the kitchen and garbage, for which discipline was finally imposed in 1985 by Jeff's being locked at night in a dark, unheated, and filthy bedroom. Jeff's nighttime detention continued until February 6, 1989, when a search warrant was executed by York County officers at approximately 9:30 p.m., pursuant to a complaint made by Jeff's teacher.

The temperature on February 6, 1989, reached a high of 10 to 12 °F. When the deputies entered the house, they conducted a search of the second floor and discovered two bedrooms, one

with the door partially ajar and the other with the door closed and secured with a padlock on the outside of the door. Sleeping in the unlocked room were three children, later identified as Michael James Crowdell, born December 25, 1974; Jesse Aaron Crowdell, born December 9, 1978; and Jacqueline Sue Crowdell, born May 11, 1981. The unlocked bedroom was heated by an electric heater and was described by the deputies as "very warm."

In order to investigate the contents of the locked room, the deputies were required to remove the padlock from the door and unlatch a clasp. The deputies noticed that the room was much colder than the unlocked bedroom. Deputy Dale Radcliff stated that the room was "very cold" and further testified: "I had . . . my heavy winter jacket on and I was cold in that room."

Inside the room the deputies found a small boy, later identified as Jeff, huddled up and sitting on the floor. Jeff was attempting to keep warm by covering himself with three badly soiled blankets placed on the linoleum floor to fashion a makeshift bed. Although there was a rollaway bed folded up in one corner of the room, Jeff stated that he was not allowed to use it because he had previously been caught smuggling food upstairs and using the bed as a "stashing" place to hide food for later consumption. Jeff's bedroom also contained a large table saw and several piles of lumber stacked against two walls and resembled a storage room or a workshop instead of a child's bedroom. The room did not contain a working light fixture and was not heated by any source other than the heat radiated into the room from the adjoining rooms and the chimney which passed through one wall. Further, compounding the lack of heat reaching the room, two of the outside walls of the house contained numerous holes through which light was visible during the day and one of which was apparently large enough to allow a small bird to find its way into the room. Jeff was locked up each evening at approximately 8:30 and forced to remain there, alone, until the following morning, when one of his parents or one of his siblings, with permission from a parent, would remove the lock and release him. Although the testimony of Jeff and his parents conflicted as to what age Jeff was when his confinement began, the defendants admitted the practice

had been ongoing for over 2 years, while Jeff testified the period of confinement was over 5 years.

At trial, Jeff described the bathroom conditions he was forced to endure while confined in his room:

> Q. . . . Jeff, what would you do if you had to go to the bathroom, after you were put in the room?
>
> A. Usually, I'd have to — Well, if I had to urinate, I'd go out my window. If I had to do otherwise, I'd usually go in my shirt or something.
>
> Q. Okay. Would you ever try to let anybody know that you had to go to the bathroom . . . [?]
>
> A. Sometimes. I'd just knock on the floor, or knock on the door to be let out. But, sometimes they weren't supposed to let me out and stuff.
>
> Q. Would your parents let you out when you'd knock and say you had to go to the bathroom?
>
> A. Sometimes.

Although unable to get out of his room to use the bathroom, Jeff was punished by the defendants for defecating in his room and was forced to clean up the feces and wash his clothing. Jeff testified: "[O]nce . . . when they were really getting fed up with it, one time I had to carry it [feces] downstairs with my hands."

Michael Crowdell testified that Jeff was confined in a locked, unheated, and dirty room each night "[a]s a last resort. Because he kept sneaking down at night and snitching food and getting into other things, causing damage. We finally, as a last resort, after warning him several times, locked his door so that he could not get out at night." Additionally, Michael Crowdell stated that Jeff was kept separated from his siblings because when Jeff was 9 years old he told his younger brother and sister "scary stories" and tried to convince them to place a paper clip into an electrical outlet. As further justification for confining Jeff, Robie Crowdell stated that when Jeff was 4 years old he often had temper tantrums and once choked his younger brother. Further, Robie Crowdell stated that Jeff misbehaved by refusing to play when asked to do so by the other children and by going to bed without brushing his teeth or going to the bathroom.

Defendants asserted at trial and on appeal that they did not

knowingly and intentionally violate § 28-707. However, at trial Jeff testified: "I had been told to tell everybody that I sleep on a sleeping bag in — in the kids' room, on the floor, and that's how I sleep." Jeff stated that his "mom and dad" had instructed him to relate the preceding information to anyone who inquired regarding his sleeping arrangements. Additionally, Michael Crowdell stated that prior to Jeff's removal from the home he did not ever tell anyone that Jeff was being locked in a separate room at night.

When Jeff was removed from defendants' home, he was 12½ years old; however, he was the height and weight of an average 7½- to 8-year-old. Following his placement in foster care and receipt of a balanced diet, Jeff began to gain weight and continued to gain weight "very well" throughout the remainder of 1989. During the first 7 months following his placement in foster care, Jeff gained over 12 pounds merely by eating a balanced diet. Jeff's teachers described him as a small, inquisitive, quiet, well-disciplined boy who was an above-average student and who was not inclined to complain about his treatment at home.

## SUFFICIENCY OF THE EVIDENCE

In determining whether evidence is sufficient to sustain a conviction in a bench trial, an appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. The trial court's findings have the effect of a verdict and will not be set aside unless clearly erroneous. *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990).

" 'The intent involved in conduct is a mental process and may be inferred from the conduct itself, the actor's language in reference to the conduct, and the circumstances surrounding an incident.' " *State v. Witt*, 239 Neb. 400, 401, 476 N.W.2d 556, 558 (1991).

From our examination of the evidence, which is construed in favor of the State in light of defendants' convictions, we

conclude that the evidence fully supports the judgments of conviction for each defendant, acting both individually and jointly in violation of § 28-707.

Jeff was placed in a situation which endangered his health and physical growth by being confined at his home in an unheated room under unsanitary conditions and fed a harshly restrictive diet.

Although defendants as parents were generally justified in using and imposing reasonable disciplinary measures on Jeff, see *State v. Sinica*, 220 Neb. 792, 372 N.W.2d 445 (1985), the continuous unlawful acts of defendants, including extended confinement in a room and denial of adequate nutrition, shelter, and care, which resulted in Jeff's poor physical health, were cruel and inhuman treatment and punishment.

As to the element of intent, it is clear from the record that both defendants intended, and by their independent and joint acts did implement, the abusive treatment of Jeff in violation of § 28-707. Defendants' excuse that Jeff's treatment was a "last resort" has an empty ring when it is related to the sordid facts of this case.

## EXCESSIVE SENTENCES

Defendants contend that their sentences should have been probation rather than incarceration, that the sentences were excessive in duration, and that the district court abused its discretion by not ordering the sentences to be served alternately to allow one of the parents to remain at home with the other children while the other parent served his or her respective sentence. Defendants were sentenced to imprisonment for not less than 20 months nor more than 5 years, a penalty statutorily authorized by § 28-105(1) for a Class IV felony. " 'A sentence imposed within the statutory limits will not be disturbed on appeal unless the sentencing court has abused its discretion in the sentence imposed.' " *State v. Johnson*, 238 Neb. 206, 208, 469 N.W.2d 761, 763 (1991). See *State v. McCaslin*, 240 Neb. 482, 482 N.W.2d 558 (1992).

An abuse of discretion takes place when the trial court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v.*

*McCaslin, supra.*

"Whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion." *State v. Zitterkopf*, 236 Neb. 743, 749-50, 463 N.W.2d 616, 621 (1990).

Defendants note that the probation officer's presentence reports, made available to the trial court, contained a recommendation that a sentence of probation should be imposed for each defendant. These reports are proper sources of information for the judge to consider; however, the sentencing judge is not bound by recommendations of the probation officer. *State v. Stranghoener*, 208 Neb. 598, 304 N.W.2d 679 (1981).

Michael and Robie Crowdell were married July 19, 1974, and five children were born of the marriage (the fifth child, Joseph Allen, was born September 9, 1989, after defendants' arrest in this matter). At the time of their arrest, defendants were living with the children in a home owned by defendants. The home was in poor repair. Michael has a history of regular employment as a plumber; his education includes high school and 1 year of college. He has two prior misdemeanor convictions and a history of alcoholism. Robie is a high school graduate with no prior criminal history. At the time of sentencing, Jeff was in a foster home and the other children resided with defendants.

Defendants contend that sentences of probation should have been imposed in response to Neb. Rev. Stat. § 29-2260(2)(a) (Reissue 1989), which provides in part:

(2) Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal

conduct.

Defendants argue that there is no risk that either defendant will engage in criminal conduct and that therefore the sentences of imprisonment should have been withheld. However, § 29-2260(2)(a) is only one guide to be considered by the sentencing court, and, there being no record to the contrary, we assume that § 29-2260(2)(a) and other options were considered by the judge.

"In considering probation in lieu of a sentence, the court should not withhold imprisonment when a lesser sentence would depreciate the seriousness of the offender's crime or promote disrespect for the law." *State v. McCaslin*, 240 Neb. at 493, 482 N.W.2d at 566.

Defendants also rely on § 29-2260(3)(k), which provides: "(3) The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of withholding sentence of imprisonment: . . . (k) Imprisonment of the offender would entail excessive hardship to his or her dependents." However, § 29-2260(3)(k) is also intended only as a sentencing guide to be considered by the sentencing judge. See *State v. Thornton*, 225 Neb. 875, 408 N.W.2d 327 (1987). We have no doubt that this provision and the factual situation presented in the record did weigh heavily upon the sentencing judge, and we are not unmindful of the same.

Under the same statutory subsection, § 29-2260(3), we note that there are additional sentencing guides related to the record that were not favorable to defendants:

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime.

Defendants' criminal abuse lasting over several years did cause serious harm to Jeff, and such harm may yet threaten future physical and emotional harm to him. Their criminal acts were

committed intentionally, and defendants knew such acts contributed to Jeff's poor health. There was no justifiable provocation or inducement for their acts.

Throughout the trial, defendants contended that their treatment of Jeff was a "last resort" response to control Jeff's behavioral problems. At the sentencing hearing, both defendants changed this justification approach by admitting their treatment of Jeff was wrong; however, they stated they did not know what else to do.

In light of the crime, the record, and the relevant information contained in the presentence reports presented and considered at sentencing, we cannot say that the judge abused his discretion by imposing sentences of imprisonment for each defendant which were within the statutory limits.

The conviction and sentence of defendant Robie Crowdell, case No. S-90-1070, should be, and is, affirmed. The conviction and sentence of defendant Michael Crowdell, case No. S-90-1071, should be, and is, affirmed.

AFFIRMED.