STATE OF NEBRASKA, APPELLEE, V. WILLIAM G. VERMUELE, APPELLANT.

492 N.W.2d 24

Filed November 20, 1992.    No. S-91-276.

924

James H. Truell, York County Public Defender, for appellant.

Don Stenberg, Attorney General, and James A. Elworth for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

In this appeal, William G. Vermuele complains that his

convictions for possession of (1) cocaine, (2) marijuana, and (3) drug paraphernalia were obtained through the use of illegally seized evidence. He also complains that his sentence of not less than 20 nor more than 60 months for possession of cocaine is excessive. Vermuele waived a jury trial and was tried and sentenced by a judge of the district court for York County.

Vermuele was fined for possession of marijuana and for possession of drug paraphernalia. He assigns no error in connection with the imposition of those fines. To be considered by an appellate court, an error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred. *State v. Moss*, 240 Neb. 21, 480 N.W.2d 198 (1992).

We affirm Vermuele's convictions and sentences.

In his brief, Vermuele argues only (1) that the district court erred in failing to sustain his motion to suppress evidence relating to cocaine found in his wallet; (2) that his conviction, apparently on the cocaine charge, is contrary to law; and (3) that his prison sentence on the cocaine conviction is excessive.

Vermuele claims that there was no probable cause to search the vehicle in which he was a passenger. He also claims that the warrantless search of his wallet was improper because (1) the search constituted a search of a container within a vehicle, not of the vehicle itself; (2) the officers had no reason to believe that any particular contraband was contained within the wallet; and (3) the search was conducted without proper inventory procedures.

If police have acted without a search warrant, the State has the burden to prove that the search was conducted under circumstances substantiating the reasonableness of such search or seizure. *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992). To determine whether any physical evidence is constitutionally inadmissible, a court must first examine the circumstances surrounding the officers' stop of the vehicle, for, if the initial stop was unconstitutional, any subsequent search and evidence obtained through that search are constitutionally inadmissible as the "fruit of the poisonous tree." See *State v. Thomas, supra* (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). ·

The record reflects that in approximately October 1987, the

York Police Department began an ongoing investigation concerning trafficking in controlled substances by Vermuele. The investigation was initiated after an officer had attended a drug intelligence meeting with a Hamilton County deputy sheriff and a member of the Nebraska State Patrol. The officer also learned that Vermuele had been arrested in Polk County for possession of cocaine. The deputy sheriff informed the York police officer that Vermuele was actively engaged in trafficking in controlled substances, mainly cocaine. A second York police officer testified he was also involved in the ongoing investigation concerning "bringing drugs into York, Nebraska."

On the evening of December 30, 1988, an anonymous caller informed the York Police Department that he had personally overheard Vermuele make arrangements with Vermuele's coworkers to sell them cocaine when Vermuele arrived at work the next evening at 7:30 at Consolidated Pet Foods (Consolidated). The informant reported that approximately 70 percent of the employees at Consolidated had cashed their checks and would be waiting for Vermuele. At that time, according to the caller, the defendant would sell them 2 to 3 ounces of 86-percent-pure cocaine. The informant further reported that Vermuele had been selling a minimum of 2-ounce quantities of cocaine on a weekly basis to his fellow employees and that Vermuele was a major source of "incoming cocaine [and] methamphetamine."

The caller advised York police that Vermuele lived in Polk, Nebraska, drove a 1975 black Chevrolet Monte Carlo with the Nebraska license plate number 41-D653, and worked at Consolidated. The informant also gave the police a general description of the defendant, including his race, sex, birth date, height, weight, and hair and eye color. The caller said that the defendant was generally accompanied by James T. Haith of Central City, Nebraska. The informant also gave police a general description of Haith, including various vital statistics, and a description of the automobile driven by Haith.

Approximately one-half hour after the anonymous call was received by the police, York police officer Roger Wolfe stopped a black Chevrolet Monte Carlo with a license plate matching the

description given by the informant. Vermuele was driving the vehicle, and Haith was a passenger. Wolfe testified that his stop was precipitated by a computer check that revealed the license plates on the defendant's car were improper. However, a subsequent check of the car's registration showed the plates had been registered to the Monte Carlo that day and had not yet been entered on the computer. At the time of Officer Wolfe's stop, he was not aware of the anonymous call that had been made to the York Police Department.

In following up on the anonymous call, an independent investigation conducted by the York police officers confirmed the descriptions and vital statistics of Vermuele and Haith as given by the caller and their employment at Consolidated. York police previously had observed Haith driving a vehicle that was somewhat similar to the description given by the informant. Officer Wolfe testified that his investigation, conducted after the anonymous call, revealed that Vermuele had a cocaine addiction problem and that in 1988 Vermuele had been convicted of cocaine possession in Polk County. Vermuele was incarcerated in the York County jail for that crime. This information was supplied to Officer Wolfe by Vermuele's jailer, to whom Vermuele admitted his cocaine addiction. Obviously, the York County jailer would be a reasonably trustworthy source of information.

On the evening of December 31, 1988, police waited for the defendant and Haith near Consolidated on Division Avenue in York. About 7:23 p.m., officers observed a vehicle, known by one of the officers to be Haith's, approaching Consolidated. In addition, the vehicle in several material respects matched the description of Haith's vehicle given by the informant. The officers stopped the vehicle and obtained identification from the driver, Haith, and his passenger, Vermuele. After removing identification from his wallet, Vermuele placed his wallet on the dashboard of the vehicle. The officers conducted a search for weapons and contraband. In the search, marijuana and drug paraphernalia were found on the defendant. A hash pipe was found under the driver's seat, where Haith had been seated. Both the defendant and Haith were arrested.

Vermuele's wallet was removed from the vehicle and taken to

the police station, where it was searched. Inside the wallet, police discovered two razor blades. A substance on the razor blades was subsequently determined to be cocaine. Vermuele was charged with possession of cocaine, a violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1988), a Class IV felony; possession of marijuana under 1 ounce, § 28-416(6), an infraction; and possession of drug paraphernalia, Neb. Rev. Stat. § 28-441 (Reissue 1989), an infraction.

Following a July 14, 1989, suppression hearing, the trial court on November 7 granted Vermuele's motion to suppress the evidence seized from his person and property on December 31, 1988. A single judge of this court reversed the order in the State's interlocutory appeal, as provided in Neb. Rev. Stat. § 29-824 et seq. (Reissue 1989). *State v. Vermuele*, 234 Neb. 973, 453 N.W.2d 441 (1990). In the subsequent bench trial, the judge took judicial notice of the facts heard at the suppression hearing and overruled Vermuele's objection to the use of evidence seized from the motor vehicle in which Vermuele was riding. At the close of all the evidence and arguments, Vermuele was convicted of all charges filed against him.

Police officers who have lawfully stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle that is as thorough as a magistrate could authorize by warrant. *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). This "automobile exception" to the Fourth Amendment's warrant requirement, which exception is established in *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), applies only to searches of vehicles that are supported by probable cause. In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been obtained. *United States v. Ross, supra.* Thus, an analysis of a warrantless search of a vehicle requires this court to address two issues, (1) the validity of the stop and (2) the existence of probable cause to believe the vehicle contains contraband.

The issuing magistrate must make a practical, commonsense decision whether, given the totality of the

circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . .

The duty of an appellate court in determining whether probable cause existed at the time a search warrant was issued is to ensure that the magistrate had a substantial basis for concluding that probable cause did in fact exist.

*State v. Utterback*, 240 Neb. 981, 985, 485 N.W.2d 760, 766 (1992).

A review of the evidence in Vermuele's case reveals that there was probable cause for the officers to stop the vehicle and to search it. Thus, it necessarily follows that the undisputed objective facts in Vermuele's case would justify the issuance of a search warrant.

In addition, Neb. Rev. Stat. § 29-404.02 (Reissue 1985) provides that

A peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed:

(1) A felony; or

(2) A misdemeanor, and the officer has reasonable cause to believe that such person . . . (c) may destroy or conceal evidence of the commission of such misdemeanor . . . .

When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992). If the York police had probable cause to arrest Vermuele, the stop was lawful.

Vermuele had previously been convicted of cocaine possession and was the subject of an ongoing criminal investigation for drug trafficking. All of the information given by the anonymous informant, except the actual possession of cocaine by the suspect, was verified by the officers and therefore proven trustworthy. In addition, the defendant was

approaching Consolidated at the approximate time the anonymous caller reported the drug sale would take place. Based on personal knowledge and information reasonably trustworthy under the circumstances, the York police had probable cause to believe that at least one of two felonies was being committed, i.e., possession of cocaine or possession of cocaine with intent to deliver. See § 28-416. The stop by the York police was lawful.

Additionally, " 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' " *State v. Thomas*, 240 Neb. 545, 554, 483 N.W.2d 527, 534 (1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Citing *Terry*, the Court in *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990), examined the relationship between an informant's reliability and the corroboration necessary to justify an investigative stop based on an informant's tip. The Court concluded that when an anonymous tip has been sufficiently corroborated to furnish reasonable suspicion that a person is engaged in criminal activity, the investigative stop does not violate the Fourth Amendment. *Alabama v. White, supra*. Because the anonymous tip in this case was sufficiently corroborated to furnish reasonable suspicion that Vermuele was engaged in criminal activity, the officers were justified in stopping the car in which he was a passenger. See *State v. Patterson*, 237 Neb. 198, 465 N.W.2d 743 (1991).

We need also decide whether the York police had probable cause to believe that the automobile in which Vermuele was a passenger contained contraband. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *United States v. Ross, supra*. In this case, if probable cause existed, any expectation of privacy in the vehicle or its contents would be subject to the authority of the officers to conduct a warrantless search, and consequently, the evidence found in Vermuele's wallet would be admissible. See, *id.*; *United States v. Johns*, 469 U.S. 478, 105 S. Ct. 881, 83 L. Ed.

2d 890 (1985).

The concept of probable cause is not readily, or even usefully, reduced to a neat set of legal rules. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). " ' "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. . . ." ' " *Illinois v. Gates*, 462 U.S. at 231-32 (quoting *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)). An officer need only have a reasonable belief, based on personal knowledge and other trustworthy information, that an offense has been or is being committed. *State v. Coleman, supra.*

Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability and must be weighed in the totality of the circumstances to determine whether probable cause exists. *Illinois v. Gates, supra.* The U.S. Supreme Court, commenting on the requirement of credibility of anonymous informants, stated that "[anonymous] tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.' " *Illinois v. Gates*, 462 U.S. at 237-38. While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not. *Illinois v. Gates, supra.* According to Neb. Rev. Stat. § 29-404.03 (Reissue 1989), an anonymous tip may be considered along with other facts and circumstances.

Given the totality of the circumstances, the officers had probable cause to believe that cocaine would be found in the vehicle in which Vermuele was a passenger. The anonymous caller informed police he personally overheard Vermuele make plans to unlawfully deliver cocaine to a specific class of people in a specified amount at a specified time and place. An anonymous tipster's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the] tip to greater weight than

might otherwise be the case." *Illinois v. Gates*, 462 U.S. at 234.

At the time police stopped the vehicle in which the defendant was riding, it was headed, near the specified time, toward the place where the defendant was heard to say he would deliver the cocaine. Before the stop, every facet of the information given by the anonymous caller, except the actual possession by the defendant of the cocaine, had been personally verified by the officers, including a description of two vehicles Vermuele would likely be traveling in and the approximate time that the defendant would be going to Consolidated to make the cocaine sale and delivery. In addition, the officers knew that Vermuele had been a cocaine addict, that he had been found guilty of a cocaine possession charge in the past, and that he had previously been linked with the delivery of drugs in York County. Under the totality of the circumstances, the officers had reasonable grounds to believe the remaining unverified bit of the informant's information to be true, that Vermuele would have cocaine in his possession. See *Illinois v. Gates, supra*.

Vermuele contends that the wallet was improperly searched because it was incapable of containing 2 to 3 ounces of cocaine. However, an officer testified that he expected to find such a quantity of cocaine contained in several small packages. At the suppression hearing, the officer testified that the wallet was searched "[b]ecause cocaine and amphetamines can be placed in small plastic containers or wrapped in paper and hidden in a wallet." Vermuele presented no evidence which contradicted this testimony.

Vermuele also argues that the search of his wallet was a search of a container found within a vehicle and thus does not fall within the exception outlined by *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). We disagree. The court in *Ross* stated that

[t]he scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.

*United States v. Ross*, 456 U.S. at 824.

The distinction between "the search of an automobile that

coincidentally turns up a container and the search of a container that coincidentally turns up in an automobile" has been abolished recently by the U.S. Supreme Court. *California v. Acevedo,* ____ U.S. ____, 111 S. Ct. 1982, 1991, 114 L. Ed. 2d 619 (1991).

> The protections of the Fourth Amendment must not turn on such coincidences. We therefore interpret *Carroll* as providing one rule to govern all automobile searches. The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.

*California v. Acevedo,* 111 S. Ct. at 1991. There being probable cause to believe the vehicle contained contraband, the police were entitled to search both the vehicle in which Vermuele was riding and his wallet found inside the vehicle.

Vermuele argues that the wallet search was conducted without proper inventory procedures. However, the search is governed by the *Carroll/Ross* "automobile exception," and Vermuele's attempt to characterize it as an inventory search is not valid.

Vermuele's assignments of error that his motion to suppress should have been sustained and that his conviction is contrary to law are without merit.

Finally, Vermuele argues that his prison sentence for possession of cocaine is excessive in view of the small amount of cocaine found on the razor blades and because of his attempts at rehabilitation. He was ordered to serve not less than 20 months nor more than 60 months for the offense of possession of cocaine. This is within the statutory limits. See Neb. Rev. Stat. § 28-105 (Reissue 1985). A sentence imposed within the statutory limits will not be disturbed on appeal unless the sentencing court has abused its discretion in the sentence imposed. *State v. Crowdell, ante* p. 216, 487 N.W.2d 273 (1992).

The trial judge, in sentencing Vermuele, stated:

> I think there is a likelihood that you will continue to break the law, given your past record. Even though, apparently, you've made attempts to . . . turn your life around. I've concluded, nevertheless, that you're not a suitable

candidate for probation because I think to grant a probation additionally in this kind of case simply promotes this kind of activity and disrespect for the law.

Vermuele's sentence is within statutory limits and does not constitute an abuse of discretion by the trial court. His final assignment of error has no merit.

AFFIRMED.