**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**James T. HOFFMAN, Defendant–Appellant.**

No. 08CA1008.

Colorado Court of Appeals, Div. III.

April 15, 2010.

Rehearing Denied June 3, 2010.*

* Dailey, J., would grant.

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Stephen Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RICHMAN.

Defendant, James T. Hoffman, appeals the trial court's order denying his motion to suppress evidence seized during the execution of a search warrant. Pursuant to a conditional plea agreement, defendant pleaded guilty to possession with intent to distribute a schedule II controlled substance while preserving the right to appeal the suppression ruling. We vacate the judgment entered on the plea, reverse the trial court's order, and remand the case for further proceedings.

## I. Background

Based upon evidence seized during the execution of a search warrant, defendant was charged with one count each of possession with intent to distribute a schedule II controlled substance, possession of a schedule II controlled substance, and child abuse. Defendant was charged as a special offender for having used, displayed, or had available for use a deadly weapon during the commission of the drug offenses.

Before trial, defendant moved to suppress the evidence obtained during the search and as the "fruit" of an unlawful search. Defendant argued that there was no probable cause to support the issuance of the search warrant because it was based on an anonymous informant's tip without sufficient independent corroboration. Following a hearing, the court denied defendant's motion.

Thereafter, defendant and the prosecution entered into a plea agreement whereby defendant agreed to plead guilty to the charge of possession with intent to distribute, with a stipulated six-year sentence to the Department of Corrections, while retaining his right to appeal the court's denial of his motion to suppress. The prosecution agreed to dismiss the remaining counts, including the counts in a separate case. The trial court accepted the plea agreement and sentenced defendant accordingly. This appeal followed.

## II. Conditional Guilty Pleas

As a preliminary matter, we address the issue which we requested the parties to address with supplemental briefing: whether conditional guilty pleas are permissible in Colorado and may be reviewed on appeal. Concluding in the affirmative, we then reach the merits of defendant's suppression motion.

The Colorado Supreme Court has not "explicitly endorsed" conditional pleading nor has it explicitly rejected the practice. See People v. McMurtry, 122 P.3d 237, 243 (Colo. 2005). In People v. Bachofer, 85 P.3d 615, 617 (Colo.App.2003), a division of this court concluded that a stipulation in a plea agreement preserves the defendant's right to appeal a ruling on a suppression motion, noting that there was no prohibition of conditional pleas in either the statutes or the Colorado Rules of Criminal Procedure and that such pleas are in the interest of judicial economy. After the completion of briefing for this appeal, a different division of this court concluded in People v. Neuhaus, 240 P.3d 391, 394–95 (Colo.App.2009), that in the absence of a statute or rule authorizing conditional plea agreements, they are not permitted under Colorado law.

After considering supplemental briefing on this issue, we agree with the conclusion in Bachofer for the reasons stated there, as well as those set forth below, and decline to follow Neuhaus. See Am. Family Mut. Ins. Co. v. Murakami, 169 P.3d 192, 193 (Colo.App. 2007) (one division of the court of appeals is not bound by the decision of another).

Conditional plea agreements can play a significant role in conserving judicial and prosecutorial resources and provide other systemic advantages in criminal cases. As noted in Neuhaus, at least thirty-two jurisdictions, including the federal courts and the United States military, have approved of conditional pleas. Six jurisdictions have adopted conditional guilty pleas by judicial decision. The federal courts have accepted conditional pleas pursuant to Fed.R.Crim.P. 11(a)(2) since 1983.

Although Neuhaus describes several reasons why conditional pleas may not be advantageous, most of which are described in the

advisory committee's notes on the federal rule, we agree with the comment of the advisory committee that the obvious advantages of a conditional plea procedure are not outweighed by any significant or compelling disadvantages. The conditional plea is particularly effective when the issue preserved for appeal is dispositive of the case. *See Neuhaus,* 240 P.3d at 394–95. Although the prosecution in this case has not conceded that a reversal on appeal of the suppression issue would be dispositive, it has stated in its supplemental brief that "principles of fairness and judicial economy might support consideration of this defendant's suppression issue on appeal."

Accordingly, we conclude that a review of his appeal on the merits is warranted.

## III. Motion to Suppress

Defendant argues that the trial court erred when it concluded that (1) probable cause existed to issue the search warrant, and (2) even absent probable cause, the officers acted in good faith in executing the warrant. We agree with defendant.

### A. Probable Cause

■ "Both the United States and Colorado Constitutions prohibit the issuance of a search warrant except upon a showing of probable cause supported by oath or affirmation particularly describing the place to be searched and the things to be seized." *People v. Pacheco,* 175 P.3d 91, 94 (Colo.2006). "Under the Colorado Constitution, the facts supporting probable cause must be reduced to writing, and so probable cause must be established within the four corners of the warrant or its supporting affidavit." *People v. Scott,* 227 P.3d 894, 897 (Colo.2010). "Probable cause exists when an affidavit for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." *People v. Miller,* 75 P.3d 1108, 1112 (Colo.2003). "To determine whether probable cause exists, we examine the totality of the circumstances." *Id.* at 1113; *see also Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "A court re-

viewing the validity of a search warrant does not engage in de novo review but rather examines whether the magistrate had a substantial basis for concluding that probable cause existed." *Pacheco,* 175 P.3d at 94.

■ Because the probable cause standard does not lend itself to mathematical certainties and "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), appellate courts generally defer to the magistrate's determination. *People v. Randolph,* 4 P.3d 477, 482 (Colo.2000).

■ Analysis of the totality of the circumstances includes consideration of the informant's veracity or reliability and his or her basis of knowledge. *Id.* at 481. An informant's reliability may be gauged in part by whether the informant's identity is known and whether he or she previously has provided accurate information to the police. *Id.* at 482 n. 2. The depth of detail provided by the informant is also relevant in the totality of circumstances analysis, as courts have inferred reliability from an informant's ability to provide details that could not be obtained easily. *Id.* at 482.

Here, a deputy of the Mesa County Sheriff's Department obtained a warrant to search defendant's trailer by submitting an affidavit presenting (1) information he received from an unidentified informant, (2) the deputy's observations of activity near defendant's trailer on the night before the warrant was issued, but a month after the informant's information was received, (3) an account of two arrests the deputy made after observing the activity near defendant's trailer, and (4) some criminal history related to prior conduct of defendant. Our review of the totality of the circumstances, including the cumulative effect of the allegations presented in the affidavit, persuades us that there was no substantial basis to conclude that probable cause existed.

### 1. Unidentified Informant

The deputy's affidavit relates that on February 24, 2007, an informant, "who wants to

remain anonymous," told the deputy that an older white male with defendant's name drove around in a green Buick sedan and distributed methamphetamine from nightfall until about 2:30 a.m. The informant stated that defendant lived in a trailer at the west end of the center aisle of a trailer park. The informant stated that defendant had a fake rock with a hollow center in which he commonly kept methamphetamine, sometimes leaving the rock outside of his residence and sometimes bringing it inside. The informant also stated that defendant kept a large amount of cash—profits from drug deals—at his residence, as well as two to three ounces of methamphetamine, which he normally carried in his underwear. The informant described defendant's automobile and identified defendant in a mug shot. The deputy used a computer system to confirm that a person with defendant's name had an address corresponding to the location described by the informant. ·

▮ Where, as here, an affidavit is based on an informant's information, the totality of the circumstances analysis depends on all indicia of reliability, including the informer's veracity and the basis of his or her knowledge, the amount of detail provided, and whether the information was current. *Pacheco*, 175 P.3d at 94–95. "[A]n informant's account of criminal activities need not establish the informant's basis of knowledge, so long as the informant's statement is sufficiently detailed to allow a judge to reasonably conclude that the informant had access to reliable information about the illegal activities reported to the police." *People v. Abeyta*, 795 P.2d 1324, 1327 (Colo.1990). However, bare assertions of knowledge are insufficient to establish the basis of an informer's knowledge. *Pacheco*, 175 P.3d at 95.

▮ But, where an informant's statements do not alone rise to the level of probable cause, it may still be established by independent police corroboration of the information. *Id.* "Even if an anonymous tip, on its face, does not provide enough detailed information to establish that the informant had access to reliable information, independent police corroboration of

some of those details which *were* provided in the tip nevertheless may support a finding of probable cause." *People v. Pate*, 878 P.2d 685, 691 (Colo.1994); *see also Abeyta*, 795 P.2d at 1327 ("[P]olice corroboration of the information that obviously relates to and describes criminal activities may properly be considered in a probable cause determination."). If "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Abeyta*, 795 P.2d at 1327. However, if only non-criminal activity is corroborated, the question of whether probable cause exists depends on the degree of suspicion that attaches to the particular types of corroborated non-criminal acts and whether the informant provides details that are not easily obtained. *Pacheco*, 175 P.3d at 95.

"Finally, [the supreme court has] held that doubts must be resolved in favor of magistrates' determinations of probable cause in order to avoid giving police an incentive to resort to warrantless searches in the hope of relying on consent or some other exception to the warrant requirement that might develop at the time of search." *Abeyta*, 795 P.2d at 1327–28.

▮ Here, even resolving all doubts in the magistrate's favor, we conclude that the informant's statements do not provide a substantial basis for issuing the warrant in this case. On its face, the affidavit fails to establish the informant's basis for knowledge. As in *Pacheco*, the affidavit in this case contains no information regarding how the informant knew that defendant was selling illegal drugs. *See Pacheco*, 175 P.3d at 95. The informant did not state that he bought drugs from defendant or that he witnessed any sales of drugs by defendant. He did not state that he had been in defendant's presence during a sale. Nor did the informant provide any other basis for his assertions, as he did not state that he had been inside defendant's trailer or had witnessed defendant handling large amounts of either methamphetamine or cash. Further, the affidavit does not reflect that the informant's reliability is bolstered because he previously gave

reliable information to the police or made a declaration against his penal interest. *See Randolph*, 4 P.3d at 482 n. 2.

Moreover, although the informant provided some details about defendant's alleged activities, the details that police corroborated, such as defendant's identity and place of residence, did not relate to or describe criminal activities. *See Abeyta*, 795 P.2d at 1327; *see also People v. Leftwich*, 869 P.2d 1260, 1268 (Colo.1994) (police corroboration of facts that were "neither suspicious nor difficult to obtain and could merely be based on rumors and hearsay" insufficient to establish probable cause). Although the informant was "right about some things," we conclude that these factual details were insufficient to allow a judge to reasonably conclude that the informant had access to reliable information about the illegal activities reported to the police. *See Abeyta*, 795 P.2d at 1327. As in *Pacheco*, 175 P.3d at 95, little or no degree of suspicion attaches to the particular corroborated noncriminal information provided by the informant here.

█ In addition, the information alleging generalized criminal activity, even if taken at face value, was stale by the time the search warrant was issued in this case. The affidavit must establish probable cause to believe that contraband or evidence of criminal activity is located in the place to be searched at the time of the warrant application, not merely at some time in the past. *Miller*, 75 P.3d at 1112. Here, as in *Miller*, the informant's description of criminal activity was nearly one month old by the time the affidavit was executed. Moreover, even if we were to read the affidavit's description of the informant's statement to mean that the described criminal activities of defendant took place on a nightly or ongoing basis—so as to render the information not stale but current—the observations of suspicious activity described by the deputy, discussed below, were made one month after the informant provided his tip. The affidavit contains no information about police attempts to ascertain whether the reported illegal activity was ongoing at any time before March 20, 2007. *See id.* at 1114.

Neither independently nor in combination with the other allegations in the affidavit does the informant's information provide a substantial basis for finding probable cause.

### 2. Deputy's Observations

█ The affidavit describes the following events, occurring on March 20, 2007, approximately one month after the deputy was provided with the informant's information. At 11 p.m. that night—a few hours before the warrant was issued and the search conducted—the deputy apparently conducted surveillance on defendant's trailer. The deputy observed a white sedan with one occupant momentarily park across the street from the trailer before parking directly in front of it. The driver left the vehicle running with the lights on as he exited the car, holding a cell phone to his ear. He walked around to the back of defendant's trailer and, about five to ten minutes later, drove away.

█ Although corroboration of non-criminal activity may in certain circumstances support a finding of probable cause, *see People v. Turcotte-Schaeffer*, 843 P.2d 658 (Colo. 1993), we conclude that these observations of non-criminal activity, even coupled with the information provided by the informant, do not provide a substantial basis for the warrant. "If vague, unverifiable allegations accompanied by verifiable, innocuous facts can result in a warrant, the constitutional requirement that a search warrant only issue upon probable cause becomes a nullity." *Leftwich*, 869 P.2d at 1268.

Nothing which the deputy observed corroborated any of the specific information supplied by the informant. Most noticeably absent is any indication that the observed individual had contact with defendant or obtained anything from, or placed anything in, the "fake rock" described by the informant. In fact, there is no mention by the deputy of observing the "fake rock"—the one arguably verifiable incriminating detail provided by the informant—in or near defendant's trailer. Moreover, there is no basis to conclude that the described activity was unusual or suspicious as the affidavit does not indicate whether the deputy conducted surveillance of the trailer park on occasions other than this one.

### 3. Two Arrests

According to his affidavit, after observing the above activity, the deputy followed the driver of the white sedan, saw him make a turn signal violation, and initiated a traffic stop. The deputy subsequently arrested the driver for traffic violations and an outstanding warrant. During a search of the driver, the deputy found two silver, screw-top containers that held substances he believed to be marijuana and methamphetamine. A search of the vehicle yielded additional suspected drugs and drug paraphernalia. The driver stated that he had just come from his brother's house and that his brother lived with defendant. The deputy's affidavit also states that at the location of the traffic stop the deputy arrested another individual for possession of drug paraphernalia and marijuana, but provided no discernible connection between the second individual and defendant.

We conclude that the circumstances of these arrests fail to establish a "direct link" between illegal drugs and defendant's trailer. *See Leftwich*, 869 P.2d at 1268. Although the deputy had observed one of the arrestees engaged in activities in the vicinity of defendant's trailer, the arrestees provided no information indicating that they had obtained the seized substances from defendant or from defendant's premises, or even that they had had any contact with defendant. Nor was any information implicating defendant obtained regarding the driver's observed cell phone usage. Moreover, as noted above, the deputy did not see the arrestees acquire anything from defendant or the "fake rock" described by the informant.

To the extent that the portion of the affidavit describing the arrests adds any weight in favor of a substantial basis to conclude that probable cause to search the trailer existed, we nonetheless conclude that under these circumstances the affidavit as a whole fails to provide a substantial basis.

### 4. Criminal History

After setting forth the above information, the deputy's affidavit concludes with two pieces of information obtained by running a background check on defendant.

First, it states that in August 2006, about seven months earlier, defendant was a passenger in a vehicle in which police found methamphetamine under the driver's seat, leading to the driver's arrest. The affidavit does not state that any charges were filed against defendant or that any investigation of defendant followed the incident. Second, the affidavit states that in November 2003, several years before the warrant was issued, defendant pleaded guilty to possession of schedule II narcotics, without specifying the particular drug.

We conclude that these additional facts add no significant weight to the substantial basis determination in this case. Defendant was not charged with, or suspected of, criminal activity arising from the traffic stop at which he was present. And, as in *Miller*, where an arrest for a drug offense seven months before the issuance of a warrant was found stale, 75 P.3d at 1114, here too defendant's three-year-old conviction for an unspecified drug offense is stale.

Thus, we conclude that the information in the deputy's affidavit, considered separately and as a whole, failed to establish a substantial basis for the magistrate's determination that probable cause existed to issue the warrant.

### B. Good Faith

If police execute a search warrant unsupported by probable cause, suppression of the evidence gained from the search is not required if the officers operated under the objectively reasonable belief that the warrant was legitimate. *Leon*, 468 U.S. at 922, 104 S.Ct. 3405; *Randolph*, 4 P.3d at 483. "The test for good faith is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization,' taking into account all of the circumstances surrounding the issuance of the warrant." *Pacheco*, 175 P.3d at 96 (quoting *Leon*, 468 U.S. at 922–23 n. 23, 104 S.Ct. 3405). Even though the magistrate issued the warrant, "[a]n officer may not automatically assume that a warrant is valid because a reviewing magistrate has executed it." *Randolph*, 4 P.3d at 483; *see*

*also People v. Altman,* 960 P.2d 1164, 1170 (Colo.1998) (stating that in an ideal system, no magistrate would approve a defective warrant, but that because ours is not an ideal system, an officer must exercise his or her own judgment). Rather, "[t]his test imposes upon the officers involved in obtaining and executing a search warrant a continuing duty to exercise reasonable professional judgment." *Randolph,* 4 P.3d at 483.

■■■ However, by Colorado statute, an officer is presumed to have acted in good faith if he or she acted pursuant to a warrant. *See* § 16–3–308(4)(b), C.R.S.2009. In *Leon,* the Supreme Court identified four circumstances in which an officer's reliance on a warrant would be unreasonable, and therefore not in good faith, and these four circumstances have been adopted in Colorado. *See Pacheco,* 175 P.3d at 96. Only the fourth circumstance is pertinent here: an officer's reliance on a warrant is unreasonable when the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Miller,* 75 P.3d at 1114.

As in *Randolph,* the officer who conducted the search here was the same officer who prepared the deficient affidavit. 4 P.3d at 484; *see also Pacheco,* 175 P.3d at 96. Although neither *Randolph* nor *Pacheco* establishes a per se rule that an officer relying on his own defective affidavit cannot establish that he was acting in good faith when executing the search warrant, here, as was determined to be the case in *Randolph* and *Pacheco,* we conclude that the deputy either knew or should have known that the warrant he obtained based on his own affidavit was lacking in probable cause, and thus it was objectively unreasonable for him to rely on it.

In *Altman,* a case upon which the prosecution relies and where the court concluded that the good faith exception applied, the court emphasized that the facts which were recited in the affidavit—and from which the officer inferred criminal activity connected to the defendant—were personally observed by law enforcement personnel. 960 P.2d at 1172; *see also Miller,* 75 P.3d at 1112 ("[T]he affidavit in *Altman* contained recent information the police had personally observed, sug-

gesting a reasonable inference that the defendant was growing marijuana in his home."). Here, the prosecution argues that the observations personally made by the deputy support the information given by the unidentified informant. We disagree.

First, none of the deputy's personal observations confirm the informant's information. The deputy did not observe defendant selling drugs from a "fake rock"; indeed, the deputy did not observe a "fake rock." He did not observe defendant selling drugs or handling large amounts of cash, or any amount of cash.

Second, unlike in *Altman,* the deputy here did not personally observe, or describe in his affidavit, *any* suspicious conduct of defendant from which he could infer criminal activity on defendant's part; indeed, he never stated that he observed defendant at all. Arguably, the deputy observed suspicious conduct by another near defendant's trailer, yet he provided no facts which connected this conduct to defendant.

We cannot conclude that good faith justified the deputy's execution of the search warrant in this case. Nor can we conclude that the seized evidence should nonetheless be admitted because, in these circumstances, the deterrent purpose of the exclusionary rule would not justify exclusion of the evidence.

## IV. Conclusion

The judgment is vacated. The order denying defendant's motion to suppress is reversed, and the case is remanded to the district court so that defendant may withdraw his conditional plea.

Judge ROY concurs.

Judge DAILEY dissents.

Judge DAILEY dissenting.

I respectfully dissent from all aspects of the majority's opinion.

## I. Conditional Guilty Plea

Initially, I disagree with the proposition that we should be entertaining this appeal.

Because I find the analysis of the appealability of conditional pleas in *People v. Neuhaus*, 240 P.3d 391 (Colo.App.2009), more persuasive than that in *People v. Bachofer*, 85 P.3d 615 (Colo.App.2003), I would dismiss the appeal and direct the trial court to provide defendant with an opportunity to withdraw his guilty plea.

Technically, I need go no further. But, because I also disagree with the majority's analysis of the merits of the trial court's suppression ruling, I will address that subject as well.

## II. Merits of Suppression Ruling

In my opinion, the majority takes too stringent a view not only of probable cause, but also of the good faith exception to the exclusionary rule.

### A. Probable Cause

Probable cause for a search warrant exists when there is "a fair probability ... that a search of a particular place will reveal contraband or other evidence of criminal activity." *People v. Miller*, 75 P.3d 1108, 1113 (Colo.2003); *People v. Hagos*, 250 P.3d 596, 616 (Colo.App.2009). As used in this context, however, a "fair probability" is not the equivalent of a mathematical probability; "[r]ather, probable cause must be equated with reasonable grounds." *People v. Pate*, 705 P.2d 519, 521–22 (Colo.1985); *see also People v. McCoy*, 870 P.2d 1231, 1235 (Colo.1994) ("The probable cause standard ... is to be measured by reasonableness, not mathematical probability."); *see also United States v. Limares*, 269 F.3d 794, 798 (7th Cir.2001) (" '[P]robable cause' is something less than a preponderance.").[1]

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[P]robable cause does not require the exclusion of innocent explanations or even an inference that criminal behavior is more likely than not."

*People v. Kazmierski*, 25 P.3d 1207, 1215 (Colo.2001) (Coats, J., dissenting); *see Limares*, 269 F.3d at 798; *United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985) ("The fact that an innocent explanation may be consistent with the facts alleged ... does not negate probable cause."); Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.2(e), at 69–70 (3d ed. 1996 & Supp. 2001) ("The mere fact that 'innocent explanations for the activity may be imagined' is not enough to defeat the probable cause showing."); *see also People v. Altman*, 960 P.2d 1164, 1171 (Colo.1998) ("A combination of otherwise lawful circumstances may well lead to a legitimate inference of criminal activity.").

In assessing probable cause, the facts and circumstances must be viewed, not in isolation, but in conjunction with one another. *See United States v. Davis*, 458 F.2d 819, 821 (D.C.Cir.1972) ("Viewed singly [the facts] may not be dispositive, yet when viewed in unison the puzzle may fit."); *see also Miller*, 75 P.3d at 1113 ("we examine the totality of the circumstances"); *United States v. Pace*, 898 F.2d 1218, 1232 (7th Cir.1990) ("the whole of a probable cause showing often is greater than the sum of its parts"); *United States v. Muniz–Melchor*, 894 F.2d 1430, 1438 (5th Cir.1990) (probable cause to arrest: "We do not consider the several factors in isolation, but rather in their interrelated context, where each may reinforce the other, so that the laminated total may indeed be greater than the sum of its parts."). The facts and circumstances must also be viewed from the perspective of a "prudent, reasonable, cautious police officer ... guided by his experience and training." *Davis*, 458 F.2d at 821; *see Gates*, 462 U.S. at 231, 103 S.Ct. 2317 (circumstances must be viewed not from a layman's perspective, nor "in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement" (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981))).

---

1. The United States Supreme Court has stated that "[t]he probable cause standard is incapable of precise definition or quantification into percentages." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

"Informants' tips doubtless come in many shapes and sizes from many different types of persons." *Gates*, 462 U.S. at 232, 103 S.Ct. 2317.

"Where, as here, an affidavit is based on an informer's tip, the totality of circumstances inquiry looks to all indicia of reliability—including the informer's veracity and the basis of his knowledge, the amount of detail provided by the informer, and whether the information provided was current." *People v. Pacheco*, 175 P.3d 91, 94–95 (Colo.2006).

"Although an informant's statements, standing alone, may not rise to the level of probable cause, additional investigation by police to corroborate the informant's statements may create probable cause." *People v. Randolph*, 4 P.3d 477, 482 (Colo.2000). In that case, "[c]orroboration of illegal activity is not an indispensable component of the probable-cause determination, as corroboration of seemingly innocent details may suffice." *Id.* "If only non-criminal activity is corroborated, the question whether probable cause exists focuses on 'the degree of suspicion that attaches to [the] particular types of corroborated non-criminal acts and whether the informant provides details which are not easily obtained.'" *Pacheco*, 175 P.3d at 95.

Because "[t]here is no fast or fixed checklist of vital criteria for determining probable cause," *United States v. Rosario*, 918 F.Supp. 524, 529 (D.R.I.1996), probable cause may be demonstrated by circumstantial evidence alone. *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir.1995); *see People v. Hakel*, 870 P.2d 1224, 1229 (Colo.1994) ("[T]he link between suspected criminal activity and a specific location to be searched may be established by circumstantial evidence and proper inferences drawn therefrom."). Ultimately, all that is required is that the desired "inference" of criminal activity be "stronger than a mere uninformed and unconfirmed guess. It is enough that the inference was a reasonable one and conformed with the other pieces of evidence making up the total showing of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 733–34, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984).

Finally, we must remember that once, as here, a magistrate has issued a search warrant based on a finding of probable cause, our review is very deferential: we do not undertake de novo review of the affidavit to determine if it contains the requisite probable cause showing; instead, we determine only whether the affidavit sets forth a "substantial basis" for the magistrate's finding of probable cause. *Randolph*, 4 P.3d at 481. Doubtful or marginal cases of probable cause are to be resolved in favor of the preference accorded to warrants. *Upton*, 466 U.S. at 734, 104 S.Ct. 2085; *People v. Pate*, 878 P.2d 685, 690 (Colo.1994).[2]

Here, the majority determines that a substantial basis for a probable cause determination did not exist because (1) the affidavit did not provide grounds to evaluate either the informant's veracity or his basis of knowledge; (2) the informant's information was a month old by the time the search warrant was executed; (3) the details corroborated by the police (such as defendant's identity and place of residence) neither related to, described, nor raised any suspicion of criminal activities; (4) the deputy's observations the night before the search warrant was obtained were of non-criminal activities which did not corroborate any of the specific information supplied by the informant; (5) the deputy did not see the person who had stopped at defendant's house acquire anything from defendant or the "fake rock" described by the informant; and (6) defendant's three-year-old conviction for possessing a schedule II narcotic drug[3] was too stale to add anything to be considered.

In my view, the majority's analysis is flawed by its

---

**2.** In this same vein, we must remember that the underlying "affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area.'"

*Gates*, 462 U.S. at 235, 103 S.Ct. 2317 (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

**3.** The affidavit did not specify the particular type II narcotic he was convicted of possessing.

- consideration of the various probable cause components largely in isolation from, rather than in light of, each other;

- discounting, as stale, the informant's information, even though the deputy had, the night before he sought the warrant, observed circumstances which indirectly corroborated the informant's information from a month before;

- near insistence that, before probable cause could be established, the officer surveilling defendant's residence actually observe a "fake rock," or a person contact defendant or take something from the "fake rock"; and

- elimination of defendant's criminal history, on staleness grounds, as a legitimate probable cause factor.

In my opinion, when read together as a whole, the facts set forth in the affidavit establish not only a substantial basis for probable cause to search but probable cause itself.

The affidavit sets forth detailed information, provided by an unnamed informant, regarding what defendant is selling (methamphetamine), where defendant carries it on his person (his underwear), and where defendant stores it (in the hollowed out center of a "fake rock" which he leaves both inside and outside his house). Regarding the last piece of information, a police officer could reasonably infer that defendant left methamphetamine outside his house in the "fake rock" as an accommodation to customers arriving at a time when he is unable or unwilling to be personally available.

I agree that, because the affidavit did not reflect the informant's basis of knowledge or veracity, this information alone could not establish probable cause. But that does not mean that it should be discounted altogether; rather, it should be considered in light of what the deputy learned the night before he sought the search warrant, information which, in my view, rendered inapplicable any concern about the staleness of the informant's information.

The affidavit reflects that, at 11 p.m. on the night before the search warrant was issued, the deputy observed an individual park his car across the street from defendant's residence; exit the vehicle, which was left running with its lights on; while holding a cell phone to his ear, walk around to the back of defendant's residence; return approximately five to ten minutes later; and drive away.

The deputy observed the individual's car make a couple of turns, at which point the deputy stopped the car for a suspected traffic infraction. At that time, the individual stated to the deputy that he had just come from his brother's house and that his brother lived with defendant. Upon discovering that the individual was wanted on a warrant, the deputy arrested him and searched his car. The deputy found suspected methamphetamine and drug paraphernalia in the car.

The majority makes much of the fact that the deputy did not himself actually observe any criminal activity at defendant's house. As a practical matter, "[i]t would be unrealistic and impose far too great a burden on the detection of crime to require actual first-hand observations by the police of criminal activity before permitting the search of a specific residence." *Kazmierski*, 25 P.3d at 1215 (Coats, J., dissenting). Instead, the issue should be what reasonable (though not necessarily exclusive) inferences the officer could draw from this information.

I think the deputy could reasonably infer that the individual had probably just gotten his methamphetamine from defendant's residence. The individual's story about visiting his brother's place strains credulity. At the very least, a person's arrival at 11 p.m., leaving the car running with its lights on, and walking not to the front, but the back, of the trailer, is strange behavior for someone ostensibly visiting his or her brother. Walking, with cell phone in hand, to the back of the residence was more consistent with a desire to either meet an unknown person or retrieve something from the back of the house.

Under the circumstances, the officer need not have dismissed, as pure coincidence, the fact that the individual had in his car the very drug (methamphetamine) defendant was alleged to be distributing. Indeed, I believe that, when considered in light of the informa-

tion previously provided by the informant, a great deal of suspicion reasonably arose from the deputy's observations of the individual's actions and discovery almost immediately thereafter of methamphetamine in the individual's car.

That, of course, was not the extent of the information the deputy included in his affidavit. The case law is clear that a suspect's criminal history is a legitimate factor to consider in a probable cause assessment. *See State v. Mordowanec*, 259 Conn. 94, 111, 788 A.2d 48, 58 (2002) (defendant's "prior record for a narcotics offense" corroborated anonymous informant's information regarding marijuana grown on defendant's premises); *State v. Duchene*, 624 N.W.2d 668 (N.D.2001) (defendant's "prior criminal convictions" for drug offenses contributed to probable cause there were now drugs in defendant's residence); *cf. United States v. West*, 219 F.3d 1171, 1178 (10th Cir.2000) (officer's determination "through the criminal history check that West had a record" relevant to show probable cause of drug possession); *State v. Baker*, 389 So.2d 1289 (La.1980) (defendant's prior conviction of heroin possession relevant to probable cause that he was presently selling heroin); *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992) (prior conviction of cocaine possession relevant to probable cause that defendant presently possessed cocaine).

Nor should defendant's three-year-old criminal conviction be disregarded as stale. Initially, three years is not a long time, given that (1) possession of a schedule II controlled substance is a class 4 felony, punishable with a presumptive range sentence of two to six years imprisonment, with three years of mandatory parole, *see* §§ 18–1.3–401(1)(a) & 18–18–405(2)(a)(I)(A), C.R.S.2009; and, consequently, (2) defendant's opportunities to have committed the same type of offense in the meantime may have been severely limited by either imprisonment or official supervision. Perhaps more important, however,

> the question of timeliness depends as much, if not more, on the nature of the information than the amount of time that has passed. In other words, the more subject the information is to speedy change, the more recent it has to be, and

the more permanent and unlikely to change, the more time may pass. At the extremes, there may be types of information so ephemeral that *any* passage of time renders them stale, and others so permanent that timeliness analysis becomes far less important. We conclude that the fact of a prior criminal conviction is one of those instances where the staleness doctrine does not apply. The passage of time does not change the fact that [the defendant] was convicted of methamphetamine manufacture in 2002, whether it be a week, or, as the case may be, approximately four years.

*Scott v. State*, 883 N.E.2d 147, 158 (Ind.Ct. App.2008).

Although, on their own, the informant's information, the deputy's observations and actions the night before obtaining the search warrant, and defendant's criminal history for possessing a schedule II narcotic, would not establish probable cause, when considered together, they reinforce one another and provide the requisite reasonable grounds to believe that methamphetamine would be found at defendant's residence.

### B. Good Faith Exception to the Exclusionary Rule

The majority and I also part company on its application of the good faith exception to the exclusionary rule.

The good faith exception to the exclusionary rule comes into play when it is determined that a warrant is not supported by facts establishing a substantial basis for a finding of probable cause. Under the good faith exception to the exclusionary rule, evidence which would otherwise be suppressed is nonetheless admissible if the officer acted upon an objectively reasonable belief that the warrant was legitimate. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Randolph*, 4 P.3d at 483.

As noted by the majority, an officer is presumed to have acted in good faith if he or she acted pursuant to a warrant. *See* § 16–3–308(4)(b), C.R.S.2009. That presumption is rebutted, and the evidence must be suppressed, however, when the affidavit in sup-

port of the search warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. 3405 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)); *accord Miller,* 75 P.3d at 1114.

In *Altman,* 960 P.2d at 1169, the supreme court focused the inquiry on whether the "affidavit was so deficient that no reasonable officer could have relied upon it as supporting a valid warrant."

The tests established by the United States and Colorado Supreme Courts for rebutting the presumption of good faith would appear to be formidable obstacles to the suppression of evidence. Yet, as applied by the Colorado Supreme Court, those tests appear to have little meaning apart from the conclusion with which a good faith analysis begins, that is, that the affidavit was not sufficient to support a magistrate's probable cause ruling on review. *Cf. Altman,* 960 P.2d at 1169 ("Obviously, the good faith exception is not called into play when the warrant is found to be valid.").

As noted in the previous section, appellate review of a magistrate's probable cause ruling is deferential: we do not undertake de novo review of the affidavit to determine if it contains the requisite probable cause showing; instead, we determine only whether the affidavit sets forth a "substantial basis" for the magistrate's finding of probable cause.

In *Miller,* our supreme court stated that, "[i]n the vast majority of cases where a substantial basis for determining probable cause does not exist, the police cannot rely on the good faith exception." 75 P.3d at 1115. Indeed, in *People v. Gutierrez,* 222 P.3d 925, 942 (Colo.2009), the supreme court noted that "it is difficult to envision a warrant that would provide an objectively reasonable basis for a search yet would not support a [magistrate's] 'practical commonsense' determination of probable cause." Yet, as the court acknowledged it had, on one prior occasion, recognized "some 'middle ground' ... between an affidavit setting forth probable cause and a bare-bones affidavit" upon which

no reasonable officer could rely. *Gutierrez,* 222 P.3d at 942.

In my view, the supreme court has taken too narrow a view of the "middle ground" in which the good faith exception operates. The court's narrow view of the "middle ground" was taken not from the decisions of the United States Supreme Court or other courts, but instead, from the opinion of a Justice who dissented against, and from commentators critical of, the very recognition of a good faith exception to the exclusionary rule. *See People v. Leftwich,* 869 P.2d 1260, 1270–71 & n. 12 (Colo.1994) (quoting *Leon,* 468 U.S. at 958–59, 104 S.Ct. 3405 (Brennan, J., dissenting)). Relying on these sources, the court in *Leftwich* concluded that "in the vast majority of cases, if a court ... ascertains that a substantial basis for determining probable cause did not exist, the court will reach the conclusion that the officer unreasonably relied on the affidavit." *Id.* at 1271 n. 12.

When we look to the decisions of other *courts,* however, we see greater room for applying the good faith exception in the face of a determination that a substantial basis for probable cause did not exist for a warrant.

In *Guerra v. State,* 897 P.2d 447, 456–59 (Wyo.1995), the Wyoming Supreme Court observed, "The threshold showing necessary to a determination of whether an officer relied in good faith upon a search warrant pales considerably next to that required for a finding of probable cause."

Similarly, the Virginia Supreme Court recently stated:

[T]he standard by which to decide whether probable cause existed for a search warrant is considerably different from the test to determine if an officer acted in good faith. The showing of an "objectively reasonable belief" that probable cause existed under the good faith exception is a significantly lesser standard than a showing of a "substantial basis" for upholding a magistrate's determination of probable cause.

*Adams v. Commonwealth,* 275 Va. 260, 657 S.E.2d 87, 95 (2008); *see also United States v. Hython,* 443 F.3d 480, 484 (6th Cir.2006) ("The showing required to establish that reli-

.ance was 'objectively reasonable' is less than the 'substantial basis' showing required to establish probable cause.") (citing *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir.2004)); *United States v. Bynum*, 293 F.3d 192 (4th Cir.2002) (same); *State v. Hoeck*, 284 Kan. 441, 163 P.3d 252 (2007) (same); *Patterson v. State*, 401 Md. 76, 930 A.2d 348 (2007) (same).

Going back to *Leon*, the test for not applying the good faith exception in this context is whether the affidavit in support of the search warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405.

Courts have noted the significance of the first word in the phrase "entirely unreasonable." *See United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir.2003) (" 'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words."); *United States v. Corral–Corral*, 899 F.2d 927, 938 n. 12 (10th Cir.1990) ("The word "entirely" is not mere verbiage."); *Adams*, 657 S.E.2d at 95 (quoting the first clause of the sentence noted above from *Carpenter*, 341 F.3d at 670).

Accordingly, courts have distinguished between those cases where the affidavits contain legally insufficient facts to support a probable cause ruling and those where the probable cause affidavits are devoid of factual support. In the former set of cases, the officers' reliance on the warrants has been upheld as objectively reasonable and the evidence has been admitted; in the latter set of cases, characterized as involving bare-bones affidavits, the officers' reliance has been held to be entirely unreasonable, and the evidence has been suppressed. *See United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir.1993); *Roth v. State*, 735 N.W.2d 882, 894 (N.D. 2007).

"A bare bones affidavit is said to contain wholly conclusory statements devoid of facts from which a magistrate can independently determine probable cause." *Altman*, 960 P.2d at 1170. In *Gutierrez*, the supreme court stated, "An affidavit that provides the details of an investigation, yet fails to establish a minimal nexus between the criminal activity described and the place to be searched, is [also] bare-bones.... [T]he mere fact that the officer-affiant 'added fat to the affidavit, but certainly no muscle,' is not a basis for finding he acted in good faith." 222 P.3d at 941–42 (quoting *United States v. Weber*, 923 F.2d 1338, 1346 (9th Cir.1990)).

This case does not involve a "bare bones" affidavit—the affidavit is not devoid of factual content, nor did it fail to establish a minimal nexus between the criminal activity and the place to be searched. As such, it was sufficient to uphold the officer's reliance on the warrant. *See United States v. Henderson*, 595 F.3d 1198, 1202 (10th Cir. 2010) ("An affidavit has enough factual support to justify reliance if it 'establishe[s] a minimally sufficient nexus between the illegal activity and the place to be searched.' ") (quoting *United States v. Gonzales*, 399 F.3d 1225, 1230–31 (10th Cir.2005)); *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) ("[T]he absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued, particularly when the officer takes steps to investigate the informant's allegation." (citation omitted)); *McKneely*, 6 F.3d at 1455 ("Given the strong presumption in favor of warrant searches, the 'great deference' accorded to a magistrate's probable cause determination, and the fact that the warrant affidavit contained sufficient facts at least to establish a reasonable suspicion of criminal activity, we hold a reasonable officer in Deputy Barney's shoes would have assumed the search warrant was valid. Thus, the district court erred in concluding otherwise."); *United States v. Olson*, 2007 WL 2317433, *1–3 (D.Utah No. 2:07–CR–199 TC, Aug. 7, 2007) (unpublished memorandum decision) ("[W]hen an 'affidavit contained sufficient facts at least to establish a *reasonable suspicion* of criminal activity,' the Tenth Circuit has held that 'a reasonable officer ... would have assumed the search warrant was valid.' " (quoting *McKneely*, 6 F.3d at 1455)), *aff'd*, 304 Fed.Appx. 664 (10th Cir.2008);

*People v. Camarella,* 54 Cal.3d 592, 286 Cal. Rptr. 780, 818 P.2d 63, 71 (1991) (issue is whether at the time of application for the warrant "a well-trained officer reasonably could have believed that the affidavit presented a close or debatable question on the issue of probable cause").

Here, as indicated by my analysis in part II(A), I think the affidavit establishes much more than reasonable suspicion or a close or debatable question on the issue of probable cause to believe that methamphetamine would be found at defendant's residence. Indeed, the analysis in part II(A) reflects a disagreement between judges as to whether probable cause exists, a disagreement which, in and of itself ought to be some measure of the deputy's good faith in relying on the warrant. *See United States v. Martin,* 833 F.2d 752, 756 (8th Cir.1987) ("When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable.").[4]

Finally, I believe that even under the limited view of the good faith exception taken by our supreme court, the affidavit would still suffice to support an officer's good faith reliance on it. Although the majority distinguishes this case from the one case in which an officer's reliance on an affidavit was held to be objectively reasonable (*Altman*), I find the case distinguishable from those in which the officer's reliance was held to be objectively unreasonable (*Leftwich, Randolph, Miller,* and *Gutierrez*), and closer on the spectrum to *Altman* than it is to the latter category of cases.

In *Leftwich, Randolph, Miller,* and *Gutierrez,* the affidavits contained verifiable facts that were not suspicious in the least or information which was not recent, or failed to establish a sufficient nexus between the alleged criminal activity and the place to be searched. *See Leftwich,* 869 P.2d at 1270–71 (verifiable facts not suspicious); *Randolph,* 4

P.3d at 482 (based on information that was not recent); *Gutierrez,* 222 P.3d at 943 (failure to establish a sufficient nexus); *Miller,* 75 P.3d at 1113 (failure to establish a sufficient nexus).

Moreover, in *Miller,* the supreme court noted that, "[i]n contrast [to earlier cases in which the good faith exception was found inapplicable], the affidavit in *Altman* contained recent information the police had personally observed, suggesting a reasonable inference that the defendant was growing marijuana in his home." 75 P.3d at 1112.

In the present case, as in *Altman,* the affidavit contained recent information of law enforcement observations suggesting a reasonable inference that, consistent with the informant's tip, defendant possessed methamphetamine in his residence.

For these reasons, I would conclude that, even if the affidavit lacked a substantial basis for probable cause to search, the deputy's reliance on the warrant was not "entirely" unreasonable, and thus, under the good faith exception, the evidence should not be suppressed.

---

4. I recognize that the applicable test here focuses on whether reasonable officers, not judges, could disagree about the sufficiency of the affidavit to establish probable cause. *United States v. Taxacher,* 902 F.2d 867, 870–73 (11th Cir.1990). "[T]he fact that thoughtful and competent judges would agree that there was no probable cause to support a warrant does not necessarily mean that an objectively reasonable police officer could not

execute the warrant in good faith." *State v. Edmonson,* 257 Neb. 468, 598 N.W.2d 450, 457–63 (1999). But if a reasonable jurist, who has more legal training than a reasonably well-trained officer, "could believe in objective good faith that there was probable cause, obviously a reasonably well-trained officer could believe likewise." *Taxacher,* 902 F.2d at 872.